(No. 35118.—
HOUSING AUTHORITY OF THE CITY OF EAST ST. LOUIS, Appellant, *vs.* GEORGE KOSYDOR *et al.,* Appellees.

*Opinion filed November 19, 1959.*

Charles M. Whealon, of East St. Louis, for appellant.

Louis Beasley, of East St. Louis, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

This is an appeal from a judgment in an eminent domain proceeding instituted by the Housing Authority of East St. Louis. The most important issue is whether the defendants, George and Raymond Kosydor, were properly allowed to recover under their cross-petition the expense of moving their equipment and merchandise. In addition to a verdict of $113,000 for the land taken, the jury returned a verdict awarding the defendants $27,000 for the costs of removing their personalty. Judgment was entered upon both verdicts, and the plaintiff has appealed.

We consider first the alleged errors relating to the determination of the award for the property taken. That property consists of fifteen contiguous lots in excess of two acres located in East St. Louis, on which the defendants conduct an automobile salvage business. The property is

improved with three buildings, two open sheds and a fence. One expert witness testified for the plaintiff. He was of the opinion that the highest and best use was commercial and he appraised the value of the land and improvements at $73,000. Of the three witnesses who evaluated the property on behalf of the defendants, two testified that it was presently being applied to its highest and best use while the third stated that it could best be utilized as a "commercial site." Their respective appraisals of the value of the land and improvements were $116,300, $131,945 and $151,000. The jury assessed the market value of the property at $113,000.

The plaintiff contends that the defendants' witnesses were erroneously permitted to testify concerning the amount of business being done by the defendants, the use to which they applied their property, the customers they served and the amount of personal property they owned in connection with their business. We have been unable to find any reference in the record to the profits or success of the defendants' business. The plaintiff asserts that it was error to permit two of the defendants' expert witnesses to testify that the highest and best use of the property was for an automobile salvage yard, its present use. But it is well-established that this evidence is material in a condemnation proceeding. (*Department of Public Works and Buildings* v. *Bohne,* 415 Ill. 253; *City of Chicago* v. *Lord, 276* Ill. 357.) And while the statement of one of the defendants that their customers come from "all over East St. Louis and St. Louis" seems immaterial, it was not objected to, and will not be considered for the first time in this court.

Evidence of the amount of personal property owned by the defendants was immaterial to a valuation of the property taken and it was properly objected to by the plaintiff. But it does not appear that this evidence influenced the jury's assessment of the market value of the land and improvements being condemned. The jury was instructed that

they were only to fix "the fair cash value of the property taken" and it is evident from their separate verdict awarding damages for moving expenses that they were aware that the personal property was being retained by the defendants.

The verdict of the jury awarding defendants $113,000 for the property taken was within the range of the evidence. In such a case, when the jury has viewed the premises, the verdict will not be disturbed unless it is clearly the result of mistake, passion or prejudice. (*Department of Public Works and Buildings* v. *Pellini,* 7 Ill.2d 367; *Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11.) There is no showing that the jury's valuation of the property taken is affected with any of these infirmities, and the judgment thereon must be affirmed.

But we are of the opinion that the judgment entered upon the jury's verdict awarding damages for the anticipated expense of removing the defendants' personal property from the premises cannot be sustained. As the plaintiff points out, there was no testimony establishing with certainty the property to be removed, and the qualifications of the witness who testified as to the cost of removal were at best highly dubious. We need not examine the evidence on this issue in detail, however, because in our opinion the defendants were not entitled to recover the cost of removing their personalty from the property taken.

The constitution provides that "Private property shall not be taken or damaged for public use without just compensation." (Art. II, sec. 13.) This requirement is repeated in the Eminent Domain Act. (Ill. Rev. Stat. 1957, chap. 47, par. 1.) Definitions of "just compensation" have ranged from "the amount of money necessary to put him in as good condition financially as he was with the ownership of the property" (*City of Chicago* v. *Koff,* 341 Ill. 520, 527-28) to "a sum of money that is the equivalent of the value of the property." (*City of Chicago* v. *Cunnea,* 329 Ill. 288, 295.) But despite differences in definition, the

applied measure of just compensation has been constant. The value to the owner of the property taken or damaged for his particular purposes, or its value to the condemnor for some special use, have been rejected in favor of the "market value" of the property at the highest and best use to which it is adapted. (*City of Chicago* v. *Harrison-Halsted Building Corp.* 11 Ill.2d 431; see Symposium, Methods of Establishing "Just Compensation" in Eminent Domain Proceedings in Illinois, Ill. Law Forum 1957, pp. 289-308.) This objective standard has been adopted in most jurisdictions. (McCormick on Damages, sec. 129.) Generally, exceptions occur only when property has special capabilities which make it unmarketable at its true value due to unique improvements, such as a church, a school or a railroad terminal. 4 Nichols, Eminent Domain 133, sec. 12.32; *City of Chicago* v. *Farwell,* 286 Ill. 415; *City of Chicago* v. *Harrison-Halsted Building Corp.* 11 Ill.2d 431.

Market value is the price which property would bring if it were offered for sale by a willing seller to a willing buyer. (*City of Chicago* v. *Farwell,* 286 Ill. 415.) In most instances the condemnee's investment is compensated by valuing his property at the highest and best use to which it is presently adapted, even though it is not being applied to that use. (*City of Chicago* v. *Equitable Life Assurance Society of the United States,* 8 Ill.2d 341; *City of Chicago* v. *Harbecke,* 409 Ill. 425.) At times he will even turn a profit on his investment. (E.g., *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183; *City of Chicago in Trust for Schools* v. *Pridmore,* 12 Ill.2d 447.) But the constitution requires only that the owner obtain the fair market value of his property (*Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 Ill. 97, 99); it does not guarantee him a return on his investment. *United States ex rel. T.V.A.* v. *Powelson,* 319 U.S. 266, 285, 87 L. ed. 1390, 1403; *City of Chicago* v. *Giedraitis,* 14 Ill.2d 45, 48; *City of Chicago* v. *Provus,* 415 Ill. 618, 621.

These considerations are controlling in this case. The petitioner does not seek to take the defendants' equipment and stock in trade; indeed it is doubtful that it could constitutionally appropriate property which it did not want and could not use. (*Department of Public Works and Buildings v. Finks,* 10 Ill.2d 20, 25.) While the burden of removal costs is incident to the taking of the defendants' realty, a similar burden attends every sale of property involving a change of occupancy. Efforts have been made to bring these incidental costs within the market value formula but they are not persuasive. (*Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 67 A.2d 851; cf. *Highway Commission* v. *Superbilt Mfg. Co.* 204 Ore. 393, 281 P.2d 707.) While the anticipated moving expenses of a seller might influence the price demanded for his property, the similar expenses of a buyer would exert a comparable influence.

The United States Supreme Court has recently considered whether removal costs are recoverable under the fifth amendment to the Federal constitution requiring "just compensation" for private property taken by the Federal government. (*United States* v. *General Motors Corp.* 323 U.S. 373, 89 L. ed 311; *United States* v. *Petty Motor Co.* 327 U.S. 372, 90 L. ed. 729; *United States* v. *Westinghouse Electric & Mfg. Co.* 339 U.S. 261, 94 L. ed 816.) These decisions indicate that the Federal guarantee of "just compensation" does not comprehend moving expenses as an element of damage except in the case where private property is taken only temporarily for public use. Absent this exception, a condemnee's right of compensation is limited to the market value of the interest taken. "Only in the sense that he is to receive such value is it true that the owner must be put in as good position pecuniarily as if his property had not been taken." *United States* v. *General Motors Corp.* 323 U.S. 373, 379.

Previous decisions of this court do not require a broader interpretation of the guarantee contained in our constitu-

tion. Reliance is placed on *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps,* 67 Ill. 607; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock,* 118 Ill. 587; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 Ill. 144; *Chicago, Peoria and St. Louis Railway Co.* v. *Wolf,* 137 Ill. 360, and *Metropolitan West Side Elevated Railroad Co.* v. *Siegel,* 161 Ill. 638. The *Capps case* involved an interpretation of a municipal ordinance, and is not applicable to the constitutional provision under consideration. (See *Chicago Flour Co.* v. *City of Chicago,* 243 Ill. 268.) As noted in *Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434, and in *City of Chicago* v. *Provus,* 415 Ill. 618, the other cases cited allowed evidence of removal costs upon stipulation of the parties and cannot be regarded as binding precedent.

For the reasons stated we cannot agree with the suggestion that a denial of damages for defendants' moving expenses amounts to a confiscation of their stock in trade. Conceivably an expected return on their investment has been frustrated by the exercise of the power of eminent domain by an agency of the State. Similar frustrations have been involved in the denial of other incidental losses, due to continuing payrolls during the time spent in moving, loss of goodwill, and the like. At times they may be substantial for the individual. (See Note, Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses, 67 Yale L. Jour. 61.) But in the absence of legislation, (*United States* v. *General Motors Corp.* 323 U.S. 373, 382; see Public Law No. 85-104, 71 Stat. 300, 85th Cong., 1st Sess. 7-8 (July 12, 1957),) they have been regarded as a part of the burdens of common citizenship.

The judgment entered upon the verdict fixing the value of the property taken is affirmed, and the judgment entered upon the verdict awarding damages for moving expenses is reversed.

*Affirmed in part; reversed in part.*