THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, v. G.A. WHITE, as Trustee, *et al.*, Defendants (Tom Parks *et al.*, Defendants-Appellees).

Fifth District   No. 5—92—0466

Opinion filed June 30, 1994.—Rehearing denied August 1, 1994.

William L. Broom III, Special Assistant Attorney General, of Carbondale, and Michael J. Luke, Assistant Attorney General, of Springfield, for appellant.

Paul Thomas Austin, of Marion, for appellees Tom Parks and Nelda Thompson.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff-appellant, the Department of Transportation of the State of Illinois (the Department), filed a complaint for condemnation against the defendants on May 2, 1988, to condemn 4.32 acres of parcel No. 270. Its purpose was to acquire land belonging to the

defendants in order to relocate and reconstruct F.A.P. Route 111, which is commonly known as Illinois Route 13 (hereinafter Route 13), which is located in Williamson County, Illinois. Of the various parcels condemned, only those of Nelda Thompson, as trustee, Nelda Thompson, individually, Tom Parks, James W. Reed, and Sonya R. Reed are here considered. James and Sonya Reed did not file a brief in this appeal.

This case concerns the proper determination of just compensation for real property that was taken by the Department and the decrease in the value of the contiguous portion that was not taken. Also at issue is the just compensation to be paid to the Reeds for their leasehold interest in the property that was taken and the value of their mobile home that was located on the same property. The jury determined that the just compensation to be paid to the defendants Nelda Thompson, as trustee, Nelda Thompson, individually, and Tom Parks for the taking of their property was $112,500 and the damages to the remainder to be paid to the same defendants was $15,000. The jury did not award anything to James and Sonya Reed for the taking of their property. The final judgment order was entered on October 9, 1991. The plaintiff's post-trial motion was denied. The plaintiff appeals.

The plaintiff-appellant cites several errors in the conduct of the trial which include (1) the trial court's refusal to admit evidence of the value of the separate interests of the individual defendants; (2) the trial court's refusal to give certain instructions and verdict forms and its allowance of other instructions and verdict forms; (3) the trial court's allowance of valuation testimony by Tom Parks; and (4) the trial court's exclusion of the valuation testimony by plaintiff's experts, J. David Thompson and Glen Grosse.

In response to the complaint for condemnation, the defendants, James and Sonya Reed, filed a motion on June 1, 1988, requesting that a separate determination be made by the jury to determine the value of the leasehold interest in the premises and the value of their mobile home with improvements.

Pursuant to the quick-take provisions of the Code of Civil Procedure (see 735 ILCS 5/7—103 (West 1992)), the Department filed a motion for immediate vesting of title. After the quick-take hearing on February 28, 1989, the trial court entered an order of immediate vesting of title and for setting value. The court determined that the amount constituting just compensation for the taking of fee-simple title to parcel No. 270 was as follows: (1) the value of the property taken was $75,000; (2) the value of the Reeds' leasehold interest and the contract for sale of their mobile home was $22,900; and (3) the value of the damage to the remainder was $14,000.

On March 14, 1989, the Reeds filed a petition for withdrawal requesting that they be allowed to withdraw the $22,900 that they were awarded in the order that disposed of the quick-take proceeding. Nelda Thompson entered her appearance in this suit by filing a petition alleging that she was the seller of the mobile home under a contract for sale to the Reeds. She claimed that the Reeds owed her a balance of $2,250 and requested that the court direct the treasurer of Williamson County to pay her $2,250 from that part of the compensation that was awarded to the Reeds. On March 17, 1989, the court entered an order for withdrawal that allowed the Reeds to withdraw the sum of $20,650. Nelda Thompson was allowed to withdraw $2,250 in satisfaction of her interest in the mobile home.

The plaintiff filed six motions *in limine* to exclude the valuation testimony of Tom Parks, Earl Parks, and Arlie Keene. Each motion *in limine* was denied. At trial, the plaintiff renewed its motions *in limine* to exclude Earl Parks' and Arlie Keene's valuation testimony. The court granted the motions *in limine* and excluded the valuation testimony of Earl Parks and Arlie Keene.

On August 23, 1991, the defendant, Tom Parks, filed a motion requesting that the jury return a separate verdict as to the leasehold interest of the Reeds.

At trial, Tom Parks testified that the highest and best use of the property that was taken was commercial. He admitted that he had considered the mobile home in his valuation. He stated that the fair market value of the 13.3 acres as a whole was $250,000. He believed that the fair market value of the 4.3 acres that were taken was $135,000. He further testified that the fair market value of the remainder as part of the whole was $115,000, the fair market value after the taking was $100,000, and the damage to the remainder by reason of the taking was $15,000. The plaintiff made a motion to strike Tom Parks' valuation testimony because he had allegedly considered improper elements in reaching his opinions of value. The court denied this motion.

After the *voir dire* of J. David Thompson, one of the plaintiff's expert valuation witnesses, the defense moved to exclude his testimony. The defendants' attorney, Paul Austin, stated that he had requested that comparables be furnished to him and that he had never been furnished with any information or a deed relating to the Perry property, which was one of the comparable properties testified to by Mr. Thompson during the *voir dire*. The defendants' motion was granted, and the court excluded the testimony of J. David Thompson on the basis that the plaintiff had not complied with Supreme Court Rule 220 (134 Ill. 2d R. 220).

After the *voir dire* of Glen Grosse, another expert valuation witness for the plaintiff, the defense moved to exclude his testimony. The defense claimed that Mr. Grosse had considered other property that had been sold and comparable sales about which he had not been informed. The defendants' motion was granted, and the testimony of Glen Grosse was excluded for failure to comply with Supreme Court Rule 220.

The plaintiff's only remaining valuation witness, Harold Miller, testified that the fair market value of the whole property was $108,600. He stated that the value of the property taken was $83,000, and that the value of the remainder before the taking was $25,500. The value of the remainder after the taking was $15,300; hence, the remainder was damaged in the amount of $10,200.

After deliberation, the jury found that the total just compensation to be paid to all of the defendants for the taking was $112,500; the just compensation to be paid to defendants Nelda Thompson, as trustee, Nelda Thompson, individually, and Tom Parks for the taking of their property was $112,500; the damages to the remainder to be paid to defendants Nelda Thompson, as trustee, Nelda Thompson, individually, and Tom Parks was $15,000; and the just compensation to be paid to the defendants James and Sonya Reed, for the taking of their property, was $0. On October 9, 1991, the final judgment order was filed. The plaintiff filed a post-trial motion on November 8, 1991. On June 12, 1992, the post-trial motion was denied. The plaintiff filed a notice of appeal on July 9, 1992.

The United States Constitution provides that private property shall not be "taken for public use, without just compensation." (U.S. Const., amend. V.) Similarly, the Illinois Constitution provides that this State is prohibited from taking or causing damage to private property without just compensation. (See Ill. Const. 1970, art. I, § 15.) The purpose of these provisions is to make the owner whole, not to place him in a better position than he was before his land was taken. *People ex rel. Director of Finance v. Young Women's Christian Association* (1979), 74 Ill. 2d 561, 572, 387 N.E.2d 305, 311.

The only question for a jury to determine in an eminent domain proceeding is the just compensation to be paid to the owner of the property sought to be condemned. (*City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 174, 554 N.E.2d 1381, 1383.) Just compensation is defined as the "market value" of the property concerned adapted to its highest and best use (*Housing Authority v. Kosydor* (1959), 17 Ill. 2d 602, 606, 162 N.E.2d 357, 359) on the date of the filing of the complaint to condemn. (*Department of Public Works & Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 314, 371

N.E.2d 616, 618.) Market value is "what the owner, if desirous of selling, would sell the property for, and what reasonable persons, desirous of purchasing, would have paid for it." *Ligare v. Chicago, Madison & Northern R.R. Co.* (1897), 166 Ill. 249, 261-62, 46 N.E. 803, 808 (now codified in 735 ILCS 5/7—121 (West 1992)).

In the instant case, the plaintiff contends that the court erred in not admitting evidence of the individual defendants' separate interests when it allowed the jury to determine the just compensation to be paid to the defendants. More specifically, the plaintiff claims that it should have been allowed to introduce testimony on the fair market value of the Reeds' leasehold interest and mobile home apart from the Parks' property.

The Illinois courts have consistently held, however, that the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. (*Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455, 456, 189 N.E.2d 238, 240.) The rationale behind this rule is that the whole does not necessarily equal the sum of its parts (*Lotta*, 27 Ill. 2d at 456, 189 N.E.2d at 240). If the court allowed testimony which applied separate dollar values to specific improvements, the jury could potentially be misled or confused. (*Department of Transportation v. Schlechte* (1981), 94 Ill. App. 3d 187, 190, 418 N.E.2d 1000, 1002.) Hence, the courts in Illinois have repeatedly held this type of testimony to be improper. (See *Schlechte*, 94 Ill. App. 3d at 190, 418 N.E.2d at 1002.) Accordingly, it is improper for a court to allow the cross-examination of a witness on the separate values of land and buildings (*Schlechte*, 94 Ill. App. 3d at 191, 418 N.E.2d at 1002) in a condemnation proceeding. "[T]here can be no genuine confusion on this point. The admission of specific figures constitutes palpable and reversible error." *Schlechte*, 94 Ill. App. 3d at 191, 418 N.E.2d at 1002.

The condemnor has the burden of proving the fair market value of the property being taken. (*County of Cook v. Holland* (1954), 3 Ill. 2d 36, 40, 119 N.E.2d 760, 762.) This places the condemnor in an awkward position when multiple interests are involved because "[t]he amount of just compensation shall be distributed among all persons having an interest in the property *according to the fair value of their legal or equitable interests.*" (Emphasis added.) (See 735 ILCS 5/7—127 (West 1992).) Therefore, the courts have provided that the division and apportionment of a condemnation award should be determined subsequent to the ascertainment of the value of the tract taken. (See *City of Rockford v. Robert Hallen, Inc.* (1977), 51 Ill. App. 3d 22, 26, 366 N.E.2d 977, 979; *Department of Public Works &*

*Buildings v. Schmauss* (1972), 6 Ill. App. 3d 470, 473, 285 N.E.2d 628, 631; *City of Vandalia v. Tate* (1966), 66 Ill. App. 2d 488, 492, 213 N.E.2d 787, 789.) In fact, the Illinois Supreme Court has stated that if "it becomes necessary for the jury to assess damages for separate interests in condemnation proceedings, it is the duty of the jury to first fix the fair cash market value of the entire property as between the petitioner and all the defendants, and then to divide the same according to the respective rights of the defendants." *Lambert v. Giffin* (1912), 257 Ill. 152, 158, 100 N.E. 496, 499.

■ Because we have no guidelines on the manner in which the jury is to apportion its valuation of the whole, we believe that a bifurcated proceeding would be appropriate in cases where multiple interests are involved. In the first part, the condemnation proceeding, the trier of fact should determine the value of the whole that was taken. Subsequent to the condemnation proceeding, another hearing should be held solely to apportion the condemnation award. In the apportionment hearing, testimony should be elicited regarding the fair market value of the separate interests of the multiple defendants. We believe that by proceeding in this fashion, the jury will not be in a position to be misled and, in turn, inflate the value of the whole since it has already been determined in the condemnation proceeding. Hence, we believe that the circuit court erred in not allowing a bifurcated proceeding so testimony could be elicited in the apportionment hearing regarding the value of each of the defendants' separate interests.

■ Furthermore, we believe that any errors regarding the jury instructions and verdict forms would only affect the amount of the jury's award. Therefore, because we believe that the jury's valuation of the whole and the damage to the remainder were within the range of the testimony given at trial, we do not believe that it is necessary to rule on the plaintiff's remaining contentions of error regarding the jury instructions and verdict forms. In any event, any error which may have occurred was harmless at best.

Additionally, the plaintiff contends that the court erred in allowing Tom Parks' valuation testimony because he relied on improper factors. More specifically, the plaintiff claims that the court should not have allowed Parks' testimony because he considered the irregular shape of the remainder in determining the fair market value of the part that was taken *and* in determining the damages to the remainder. We disagree.

Generally, the owner of land is qualified to express an opinion of its value merely by virtue of his ownership. (*Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 735, 381 N.E.2d 843, 846.)

This rule, however, is not absolute. (*Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846.) " '[M]ere ownership does not render a person competent to render an opinion as to value, unless he is in fact familiar with facts which give the property value.' " (*Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846 (quoting 5 J. Sackman, Nichols on Eminent Domain, § 18.4(2) (rev. 3d ed. 1969)).) This court has previously interpreted this exception to the general rule to be limited to "special circumstances where, for example, a person has inherited the property or has no realistic idea of its value." (*Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846; see *American National Bank & Trust Co. v. City of North Chicago* (1987), 155 Ill. App. 3d 970, 973, 508 N.E.2d 1111, 1113-14.) The burden is on the party objecting to the landowner's testimony to show that it has no probative value and falls within this exception. (*Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846.) The tool of cross-examination can be utilized to expose the absence of probative value in the landowner's testimony. See *Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846.

The colloquy between Mr. Broom and Mr. Parks regarding the irregular shape of the remainder is, in relevant part, as follows:

"Q. [D]o you have an opinion as to the fair market value of the part taken as of May 2nd, 1988?

A. I would think around $135,000.

\* \* \*

Q. And what is the basis of that opinion?

A. Well, the way they have left the irregular shape, and so on and so forth it's just not what I had to start with, and—

Q. All right. Now, these questions are kind of tricky, so be sure you understand them. Do you have an opinion as to the fair cash market value of the remainder as a part of the whole on May 2nd, 1988?

A. I would think around $115,000.

Q. All right. And do you have an opinion as to the fair market value of this remainder after the taking?

A. I'd say $100,000.

Q. An then do you have an opinion as to the damage to the remainder here by reason of the taking?

A. I'd say $15,000.

Q. And can you tell me the basis of that opinion?

A. The reason why it's damaged?

Q. Yes.

A. There is totally no commercial to it now. The way it sits now, there is no water, no sewer \*\*\*.

Q. All right, and what about the shape of it?
A. It's irregular.

* * *

Q. Now, you mentioned, when we were talking about the value of the property taken, *** [y]ou were talking about the irregular shape of the property that will be remaining?
A. Right.
Q. So, if I understand it correctly, when you are coming up with a value on the fair cash market value of the property taken, *** you are considering also the irregular shape of the property that is left.
A. No, sir. No.
Q. Okay, please explain. I don't understand that.
A. Well, I took the irregular property that was left as a damage, the way they damaged the property.
Q. *** As I understood it, you said that one of the—one of the elements in your consideration of the value of the property taken was irregular shape. Is that correct?
A. Was it regular shape?
Q. Irregular shape.
A. I don't understand.
Q. The irregular shape. The shape is not a regular shape.

* * *

Q. Okay. And now, if I understand it, then one of the elements in your opinion of the $135,000 of the taking—*** is the irregular shape that it will leave in your property remaining.
A. Yes, sir."

Mr. Broom moved to strike Mr. Parks' valuation testimony for various reasons. After denying Mr. Broom's motion, the court stated as follows:

"[M]ost of this is *de minimis* in nature and goes to the *** weight of Mr. Parks' testimony rather than to his competency as a witness.

Specifically, I also heard him say what you heard him say, Mr. Broom, about the irregular shape on direct examination when Mr. Austin was questioning him, and *** I thought that he misunderstood him then, and I don't think that you ever got him to understand exactly what you were asking him on cross[-] examination."

■ We believe that a review of the record demonstrates that Mr. Parks did not fully understand the questioning regarding the irregular shape of the property. A review of the record demonstrates that it is unclear whether Mr. Parks valued the irregular shape in the taking of the property *and* in the damage to the remainder.

In this case, we fail to see how the court abused its discretion. Furthermore, we believe that the plaintiff has failed to meet its burden. We agree with the trial court that Mr. Parks never fully understood Mr. Broom's line of questioning. Hence, we refuse to say that Mr. Parks' testimony should have been barred.

The plaintiff further claims that Mr. Parks considered improper elements of damage in arriving at his opinion of the damages to the remainder. The plaintiff claims that Parks considered the possibility that he might have to mow around the right-of-way markers and the possibility that the State would not mow its own right-of-way. The plaintiff claims that these elements of damage are speculative and should not have been considered by Mr. Parks in arriving at his opinion as to the damages to the remainder. Moreover, the plaintiff claims that it was prejudiced because the jury returned an inflated verdict because of the aforementioned testimony by Mr. Parks.

■ We disagree. The jury was instructed as follows: "In determining the fair cash market value of the remainder after the taking, you may consider any benefits or detriments from the proposed public use, *proved by the evidence*, which increase or decrease the fair cash market value of the remainder." (Emphasis added.) Furthermore, the jury was aware from the testimony that was given by Mr. Parks that he could have considered several elements of damage that he had not considered in arriving at his valuation of damages to the remainder. Accordingly, because we fail to see how the jury verdict was the result of passion or prejudice (see *Trustees of Schools of Township No. 42 v. Schroeder* (1961), 23 Ill. 2d 74, 79, 177 N.E.2d 178, 180), and because the jury verdict was well within the range of the testimony given at trial, we believe that the jury returned a proper verdict for damages to the remainder.

Finally, the plaintiff claims that the court erred in excluding the valuation testimony of J. David Thompson and Glenn Grosse.

We believe that a brief history of the motions that were filed regarding expert witnesses is in order. On October 7, 1988, Mr. Austin filed interrogatories concerning a demand for expert witness pursuant to Supreme Court Rule 220 (see 134 Ill. 2d R. 220). Interrogatory No. 2 stated as follows:

> "For each expert listed in your answer to Interrogatory No. 1, state the following:
> a. The subject matter on which each expert is expected to testify;
> b. The facts, opinions and conclusions to which each expert will testify;
> c. Summary of the grounds for each opinion, fact or conclusion;
> d. The qualifications of each expert."

On January 20, 1989, defendant Nelda Thompson, as trustee, filed a motion to continue the quick-take hearing until after the plaintiff provided answers to the interrogatories and request to produce, and she further requested an order compelling the plaintiff to answer the discovery. On January 23, 1989, the defendants moved to dismiss the quick-take hearing due to the fact that the plaintiff failed to disclose the identity of its expert witnesses pursuant to Supreme Court Rule 220, and defendants stated that they had filed written interrogatories requesting the identity and reports of expert witnesses on October 7, 1988. On January 25, 1989, the Department filed answers to interrogatories concerning the demand for expert witness pursuant to Supreme Court Rule 220, answers to interrogatories, and a response to the request to produce. Insofar as the interrogatories that were filed on October 7, 1988, applied to J. David Thompson and Glenn Grosse, the answers were as follows:

"a. Valuation

b. Appraisal not completed at this time

c. Not available

d. Not available."

The defense filed a motion to compel on January 27, 1989, claiming that the plaintiff's answers to interrogatories concerning expert witnesses and the answers to the request to produce were not in compliance with the interrogatories or the request. The motion to compel was denied. An oral motion to continue was granted, and the quick-take hearing was reset for February 9, 1989.

The plaintiff filed amended answers to interrogatories concerning demand for expert witness pursuant to Supreme Court Rule 220 on February 8, 1989, which notified the defendants that Harold Miller, Glenn Grosse, and J. David Thompson would testify as to the valuation of parcel No. 270. Although Grosse's and Thompson's valuations were still not complete, the defendants were notified that Miller would testify that the value of the property that was taken was $83,100 and the damage to the remainder was $10,200.

On December 4, 1990, J. David Thompson's deposition was taken. He testified that he had considered three comparable sales: (1) Ethel Springhart to Tom Parks, (2) Federal Land Bank to Gene Watson, and (3) Karen Perry to Mark McKinney. In his deposition, J. David Thompson said that he had a copy of the deed from the Federal Land Bank to Gene Watson at his office; however, he said that he had failed to bring it with him to the deposition. The plaintiff's attorney agreed to send the defendants' attorney a copy of the Federal Land Bank deed. Mr. Austin later agreed that he had received this deed. When the deposition ended, the plaintiff's attorney suggested that

they make copies of the two deeds that J. David Thompson did have with him.

After the *voir dire* of J. David Thompson, the defendant moved to exclude his testimony. Mr. Austin argued that he had requested that the comparables be furnished to him prior to taking the deposition and the plaintiff had not complied with his request with regard to the Perry property. He said that the Perry property was not comparable, and he stated, "[N]o copy of that deed was ever provided to us before this moment today." Austin also claimed that Thompson testified that he had based most of his values on the aforementioned comparables.

Mr. Kenneth Bleyer, plaintiff's counsel, stated that Mr. Austin was aware from Mr. Thompson's deposition that he had considered the Perry property. Mr. Bleyer said: "Now, whether or not he had a copy of that deed with him, I can't recall. *** I don't remember if he did or not. I think I was present that day, but I just don't recall if he had the deed." Mr. Austin further told the court that the plaintiff had given him, as a Rule 220 disclosure for their experts, a book of comparables. Austin claimed that neither the Perry property nor the Federal Land Bank property was in the book of comparables. Mr. Broom argued to the court that because Thompson did not have the Federal Land Bank deed with him, the only deduction that could be made from the transcript of the deposition when he said, "why don't we go ahead and get copies of those two deeds that you do have for both of us," is that he made copies of the Springhart and Perry deeds and delivered them to Mr. Austin by hand the day of J. David Thompson's deposition.

Mr. Austin claimed that he had a great deal of difficulty in obtaining responses to the expert witness interrogatories. He said that the State had tried to give him the impression that it could not get the information that he had requested. Mr. Austin stated that he was entitled, when taking depositions, to have all of the documents that the experts based their opinions on prior to the time that he took their depositions. Even though Mr. Austin admitted that Mr. James Blackwood, an employee for the Department, had furnished him with a book of comparable sales, he claimed that the Perry deed and the Federal Land Bank deed were not included in that book. Austin claimed that the first time he learned of the Perry and Federal Land Bank deeds was at the deposition of J. David Thompson. Mr. Broom argued to the court that under Supreme Court Rule 220, one may answer an interrogatory by submitting the signed report of the expert containing the requested information. Mr. Broom did admit, however, that the comparables were not listed in the report. Mr. Broomstated that there had been no complaint about the lack of

comparable sales being furnished until now. Mr. Broom stated that it was his belief that neither party had fully complied with Supreme Court Rule 220 because they were attempting to resolve their differences informally. Mr. Broom argued that if Mr. Austin had not received the deed to the Perry property on the day of Mr. Thompson's deposition, why had he not followed up on that prior to this time?

The court stated that Mr. Austin had made inquiry into all matters of which he had complained. The court said that the plaintiff had not complied with Rule 220, and that he did not believe that the answers to the Rule 220 interrogatories were adequate. The court stated as follows:

> "Rule 220 says that upon interrogatory provided, propounded for that purpose, the party retaining or employing an expert witness shall be required to state his conclusions and opinions and the bases therefore, among other things. It requires further that a party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or its counsel. I think the original answer filed by Mr. Bleyer, if in fact that information had not been obtained or developed at that time, would have been appropriate if *** there [had] been a seasonable supplement, but there never was one.
>
> Rule 220 further provides that the failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness."

The court then granted Mr. Austin's motion to exclude J. David Thompson's testimony.

During *voir dire*, Glenn Grosse testified that he had based his opinion of the value of the property on 11 comparable sales "plus all the other market evidence that I had." He stated that the "other market evidence" included an entire book of sales that highway appraisers had compiled. He also stated that he relied upon sales other than the five sales that he had included in the list. Mr. Grosse admitted that he had relied on other sales, in a general way, in arriving at the value of the Parks and Thompson property. Even though Mr. Grosse had relied on other sales, he did not have copies with him. He admitted that he could not identify the other sales because he did not have the copies with him at that time. Mr. Grosse conceded that he did not provide a copy of the "other sales" to the Department because he could not remember it requesting him to do so. Mr. Austin moved to exclude the testimony of Glenn Grosse based upon the fact that he had considered "other sales or comparables" that he did not know about. Mr. Austin argued that Mr. Grosse did not have a list of

other sales that he had considered and that he was not even sure about the number of other sales that he had considered.

Upon learning that the answers to the interrogatories concerning demand for expert witness pursuant to Supreme Court Rule 220 were exactly the same as Mr. Thompson's answers, the court stated that it was his opinion that the defendant was entitled, under Supreme Court Rule 220, to have those interrogatories answered and seasonably updated. The court stated that it was clear from Mr. Grosse's testimony that he had considered not only comparable sales but also "other sales" that were not given to Mr. Austin. The court determined that the plaintiff had violated Supreme Court Rule 220 and granted the defendants' motion to bar the testimony of Mr. Grosse.

The defendant makes much of the fact that another judge had entered an order on November 28, 1989, denying the defendants' motion to compel supplemental answers under Supreme Court Rule 220. That judge stated that "any additional information may be obtained by deposition."

The Illinois Supreme Court has recently held that the imposition of sanctions for a violation of a discovery rule is a matter within the sound discretion of the trial court. (*Sohaey v. Van Cura* (1994), 158 Ill. 2d 375.) The relevant portions of Rule 220 read as follows:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

\* \* \*

(c) Discovery.

(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:

(i) the subject matter on which the expert is expected to testify;

(ii) his conclusions and opinions and the *bases therefor*; and

(iii) his qualifications.

(2) The party answering such interrogatories may respond by submitting the signed report of the expert *containing the required information.*

(3) *A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.*

\* \* \*

(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with *or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings.* However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (Emphasis added.) 134 Ill. 2d R. 220.

The rule requires that a party seasonally submit a modified report or supplemental answers taking into account shifts in the expert's views in order to prevent an undisclosed shift in theory or belief. (See 134 Ill. 2d R. 220, Committee Comments.) The party retaining the expert witness has the obligation to keep abreast of the opinions which may be expressed at trial. Therefore, "[c]ourts should not view favorably the late disclosure of 'new' opinions following the mandatory cutoff deadlines." (See 134 Ill. 2d R. 220, Committee Comments.) The purpose of this rule is to permit litigants to ascertain and rely upon the opinions of experts that have been retained by their adversaries. Hence, paragraph (d) limits the permissible scope of an expert's testimony to opinions that have been expressed in response to discovery. An expert will be permitted, however, to testify as to matters other than those previously disclosed in instances where no inquiry is made during discovery. The Committee Comments emphasize that this latter qualification has limited application in light of the requirement that "a party continuously supplement discovery concerning the opinions of such witnesses." See 134 Ill. 2d R. 220, Committee Comments.

■ Therefore, even though a different judge previously ruled that the plaintiff did not have to provide additional information under Supreme Court Rule 220, we refuse to allow the Department to hide behind that order when Supreme Court Rule 220 mandates continuous supplementation in the discovery process. Mr. Austin requested this information during the discovery process, and it is unequivocal that the plaintiffs failed to provide it. Therefore, we do not believe that the trial judge abused his discretion in determining that Mr. Thompson's and Mr. Grosse's testimony should be excluded.

In light of the foregoing considerations, we believe that this cause should be remanded so that the jury can have an opportunity to apportion that part of the $112,500 that belongs to the Reeds. In this proceeding, the apportionment hearing, valuation testimony should be elicited on the separate interests of the various defendants. If the

amount of the separate interests exceeds $112,500, the jury award should be divided proportionately between the defendants.

Accordingly, the judgment of the circuit court is affirmed in part, and the cause is remanded with directions for a jury determination on the proper apportionment of the $112,500.

Affirmed in part and remanded with directions.

CHAPMAN and WELCH, JJ., concur.