No. 5-95-0540

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              FIFTH DISTRICT

_________________________________________________________________

THE COUNTY OF ST. CLAIR, A Municipal  )  Appeal from the

Corporation,                          )  Circuit Court of

                                      )  St. Clair County.  

     Plaintiff-Appellee,              )   

                                      )

v.                                    )  No. 93-ED-15

                                      )   

NANCY WILSON, ELEANOR GOETTE,         ) 

EDGAR ENSLIN, PAUL HAAS,              )

St. Clair County Treasurer, and       )

UNKNOWN OWNERS,                       )  Honorable

                                      )  James M. Radcliffe,

     Defendants-Appellants.           )  Judge, presiding.

_________________________________________________________________ 

 

     JUSTICE CHAPMAN delivered the opinion of the court:

     On September 29, 1993, plaintiff, St. Clair County (the

County), filed an eminent domain action to acquire 65.11 acres of

land from defendants Nancy Wilson, Eleanor Goette, and Edgar

Enslin, Jr. (owners).  The land borders Scott Air Force Base (the

base) in St. Clair County, Illinois, and the owners' property is

one of about 100 properties the County has sought to condemn for

the development of a joint-use airport which is to be located on

the base.  The central issue at trial was the fair market value of

the owners' 65.11 acres.  After hearing the testimony from the six

appraisal experts, who espoused values ranging from $210,000 to

$600,000, the jury returned a verdict of $250,000.  

     The owners raise six arguments: (1) the court erred in barring

the testimony of a bank manager concerning offers to purchase a

parcel of land near the land at issue; (2) the court erred in

denying the owners' motion in limine which sought to prevent the

jury from learning that the County's appraiser had previously been

retained by the owners in the same matter; (3) the court erred in

denying the owners' motion to strike the testimony of one of the

County's appraisers because he improperly reached his conclusion;

(4) the court erred in barring the testimony of one of the owners'

witnesses on alleged admissions made by the county board chairman

before the St. Clair County Farm Bureau; (5) the court erred in

permitting the County's attorney to inquire about the possible

postfiling closing of the nearby Air Force base; and (6) the owners

are entitled to a new trial because the County violated its own

order in limine when one of its witnesses testified to the source

of funding for the property at issue.     

                  Barring Testimony of Offers to Purchase

     The owners first argue that the court erred in barring the

testimony of Dan Davis, the vice president and farm manager for

Magna Trust Company.  Magna Trust was the guardian of the Boettcher

estate, which owned 82.25 acres of vacant land immediately west of

the property at issue.  At the May 1, 1995, pretrial conference,

the County's attorney moved to bar Davis's testimony concerning

offers Davis received from third parties to purchase some or all of

the 82.25 acres from the Boettcher estate.  The County argued that,

in eminent domain cases, data of comparable sales, rather than mere

offers to purchase, must be used by courts to determine the value

of property.  The County concedes that in some cases evidence of

offers to purchase has been admitted, but, the County points out,

those offers to purchase concerned the subject property only, and

the County urges this court not to extend that narrow exception.

     The owners argued that evidence of offers to purchase adjacent

property, which is similar in size and location and uses the same

utilities and fronts on the same roads as the subject property,

should have been presented to the jury.  The trial court agreed

with the County and barred Davis's testimony.  We reverse the trial

court's grant of the County's oral motion in limine regarding the

introduction of evidence of offers to purchase made on the

Boettcher estate property.  

     In an eminent domain proceeding the only question for a jury

to determine is the just compensation to be paid to the owner of

the property sought to be condemned.  Department of Transportation

v. White, 264 Ill. App. 3d 145, 149, 636 N.E.2d 1204, 1208 (1994). 

Just compensation is defined as the fair market value of the

property at its highest and best use on the date the complaint was

filed.  Department of Transportation ex rel. People v. Central

Stone Co., 200 Ill. App. 3d 841, 843, 558 N.E.2d 742, 744 (1990). 

Fair market value is the amount of money which a willing buyer

under ordinary circumstances would pay to a willing owner in a

voluntary sale, where neither party is under any obligation to buy

or sell.  People ex rel. Department of Transportation v. Birger,

155 Ill. App. 3d 130, 134, 507 N.E.2d 1321, 1324 (1987).

     In Department of Public Works & Buildings v. Lambert, 411 Ill.

183, 191, 103 N.E.2d 356, 360 (1952), the Illinois Supreme Court

stated:

     "The rule is established in this State that, in the

     absence of evidence of actual sales, bona fide offers to

     purchase for cash by persons able to buy are some

     evidence of what the property would sell for."  (Emphasis

     added.)  

     The County relies upon the emphasized language and argues that

because the County offered evidence of actual sales of similar

property, evidence of offers made on similar property was not

admissible.  In addition, the County argues that even if evidence

of bona fide offers to purchase the Boettcher property were

admissible, the offers the owners wanted to introduce were not bona

fide.

     The owners argue that Rule 703 of the Federal Rules of

Evidence, as adopted by the Illinois Supreme Court in Wilson v.

Clark, 84 Ill. 2d 186, 417 N.E.2d 1322 (1981), makes evidence of

bona fide offers to purchase admissible.  Rule 703 states:

     "The facts or data in the particular case upon which an

     expert bases an opinion or inference may be those

     perceived by or made known to him at or before the

     hearing.  If of a type reasonably relied upon by experts

     in the particular field in forming opinions or inferences

     upon a subject, the facts or data need not be admissible

     in evidence."  Fed. R. Evid. 703.

     Both parties rely on City of Chicago v. Anthony, 136 Ill. 2d

169, 554 N.E.2d 1381 (1990), for their respective positions.  The

owners focus on a single sentence in Anthony: 

     "Rule 703 was intended to `bring the judicial practice

     into line with the practice of the experts themselves

     when not in court.'"  Anthony, 136 Ill. 2d at 184, 554

     N.E.2d at 1388 (quoting Fed. R. Evid. 703, Advisory

     Committee's Note).  

     The owners argue that to prohibit the jury from hearing

evidence of the offers to purchase, when the appraisers testified

they would have considered them in forming their valuation of the

subject property had they known about them, was not "in line with

the practice of the experts themselves when not in court."    

     The County relies on another portion of Anthony:

     "If another rule of law applicable to the case excludes

     the information sought to be relied upon by the expert,

     the information may not be permitted to come before the

     jury under the guise of a basis for the opinion of the

     expert.

                                   * * *

          In this case, it is eminent domain law which

     controls the admissibility of evidence for its truth as

     well as for the limited purpose of explaining the basis

     for an expert's opinion pursuant to Rule 703."  Anthony,

     136 Ill. 2d at 186-87, 554 N.E.2d at 1389.

     The justification for Rules 703 and 705 (Fed. R. Evid. 705) is

discussed in McCormick on Evidence:

     "[U]nder Rule 703 (and Rule 705) an expert may give a

     direct opinion upon facts and data, including reports,

     which are inadmissible or not introduced into evidence,

     provided the reports or other data are `of a type reason-

     ably relied upon by experts in the particular field in

     forming opinions or inferences upon the subject.'  This

     view is justified on the ground that an expert in a

     science is competent to judge the reliability of state-

     ments made to him by other investigators or technicians. 

     He is just as competent indeed to do this as a judge and

     jury are to pass upon the credibility of an ordinary

     witness on the stand.  If the statements, then, are

     attested by the expert as the basis for a judgment upon

     which he would act in the practice of his profession, it

     seems that they should ordinarily be a sufficient basis

     even standing alone for his direct expression of profes-

     sional opinion on the stand, and this argument is

     reinforced when the opinion is founded not only upon

     reports but also in part upon the expert's firsthand

     observation.  The data of observation will usually enable

     the expert to evaluate the reliability of the statement." 

     1 J. Strong, McCormick on Evidence §15, at 64-65 (4th ed.

     1992).

     In Anthony, an eminent domain case, the supreme court held

that it was for the trial court, in its discretion, to determine

whether the underlying facts upon which an expert based an opinion

were of a type reasonably relied upon by experts in their field. 

In this case, all of the experts on both sides indicated that bona

fide offers to purchase property such as the Boettcher estate tract

would be relied upon by them in evaluating the property at issue. 

No one indicated that such offers were not reliable.  Under these

circumstances we conclude that the trial court abused its discre-

tion in excluding all the offers.  

     The admission of testimony about offers to purchase is not

dependent upon the presence or absence of evidence of comparable

sales figures.  Evidence of comparable sales data may be of

superior quality in some cases, but its mere presence does not

automatically exclude evidence of offers to purchase.  The question

to be addressed is not whether comparable sales data were avail-

able; it is whether the offers to purchase were such that they

would meet the requirements of Rules 703 and 705.  If they were,

they should be allowed.  See Department of Transportation v.

Beeson, 137 Ill. App. 3d 908, 485 N.E.2d 511 (1985).  

     The County contends that, even if the offers to purchase met

the requirements of Rules 703 and 705, they were properly excluded

because the owners did not prove that they were bona fide offers to

purchase.  An offer is bona fide when it is made in good faith, by

a person of good judgment, who is acquainted with the value of real

estate and possesses a sufficient ability to pay.  Anthony, 136

Ill. 2d at 188, 554 N.E.2d at 1390.  The offer must be for cash,

rather than for credit or in exchange, and it must be made with

reference to the property's fair market value.  Anthony, 136 Ill.

2d at 188, 554 N.E.2d at 1390 (quoting City of Chicago v. Harrison-

Halsted Building Corp., 11 Ill. 2d 431, 438, 143 N.E.2d 40, 45

(1957)).  

     At the time the court granted the County's motion in limine,

the only evidence of the bona fide nature of the offers to purchase

was Davis's affidavit stating that the offers were bona fide.  To

the extent that the court's ruling was based upon a finding that

the offers to purchase were not bona fide, that finding was against

the manifest weight of the evidence.

                   Expert Previously Retained by Owners

     The owners' second argument is that the court erred in denying

their motion in limine which sought to prevent the jury from

learning that Albert Seppi, an appraiser called by the County at

trial, had previously been retained by the owners in the same

matter.  The County argued that appraisers are expert witnesses and

are subject to the same rules as any other expert.  Furthermore,

according to the County, the issue of which side retained an expert

goes to the expert's credibility and should therefore be admissi-

ble.  

     The eminent domain cases that have previously dealt with this

issue have held that it is proper to exclude the fact that an

appraiser was originally retained by the opposing party who decided

not to call the appraiser as a witness.  See Department of Business

& Economic Development v. Schoppe, 1 Ill. App. 3d 313, 272 N.E.2d

696 (2d Dist. 1971); Department of Public Works & Buildings v.

Guerine, 19 Ill. App. 3d 509, 311 N.E.2d 722 (2d Dist. 1974);

Department of Public Works & Buildings v. Exchange National Bank,

40 Ill. App. 3d 623, 356 N.E.2d 376 (2d Dist., 2d Div. 1976);

Department of Public Works & Buildings v. Hall, 30 Ill. App. 3d

831, 333 N.E.2d 701 (2d Dist., 2d Div. 1975); Department of

Transportation v. Gonterman, 41 Ill. App. 3d 62, 354 N.E.2d 76 (5th

Dist. 1976).  

     Department of Public Works & Buildings v. Guerine, 19 Ill.

App. 3d 509, 311 N.E.2d 722 (1974), was the first case to discuss

this issue in depth.  Guerine provided two reasons why a court did

not err in granting a motion in limine when the opposing party

originally hired the appraiser.  Guerine, 19 Ill. App. 3d at 513-

14, 311 N.E.2d at 725-26.  First, introduction of the appraiser's

prior employment relationship could arouse the jury's emotions of

prejudice, and second, it could create a collateral issue that

would distract the jury from the main issue of determining just

compensation.  Guerine, 19 Ill. App. 3d at 513-14, 311 N.E.2d at

725-26.  Guerine acknowledged that there is arguably some probative

value in the admission of an expert appraisal witness's prior

employment relationship with one of the parties, but the court

stated that any probative value was outweighed by the prejudice and

the creation of collateral issues caused by the testimony. 

Guerine, 19 Ill. App. 3d at 513-14, 311 N.E.2d at 725-26.

     Guerine and the line of cases which follow it were all decided

before the Illinois Supreme Court adopted Supreme Court Rule 220

(103 Ill. 2d R. 220).  Rule 220 was repealed by an order entered

June 1, 1995, to be effective on January 1, 1996, but the amended

rules do not differ in their demand that experts be disclosed. 

Compare 134 Ill. 2d R. 220 with Official Reports Advance Sheet No.

20 (September 27, 1995), R. 220, effective January 1, 1996.  Rule

220 and its successor provisions of the supreme court's rules on

the discovery of experts do not distinguish between types of cases

on the issue of expert identification and disclosure.  The rules

apply equally to all types of cases.  We therefore decline to

follow Guerine and the line of cases which follow it, all of which

create a different rule for appraisal experts in eminent domain

cases.  We see no reason to treat them differently from other

experts.  See Beeson, 137 Ill. App. 3d 908, 485 N.E.2d 511.  

     What is the general rule when one party retains an expert and

decides not to call the expert, who is then called by an adverse

party?  Can the employment by the original party be disclosed to

the jury?  We believe that such a disclosure is appropriate as a

general rule.  In Taylor v. Kohli, 162 Ill. 2d 91, 642 N.E.2d 467

(1994), the supreme court addressed both the agency status of

experts and the appropriateness of giving the missing-witness

instruction (see Illinois Pattern Jury Instructions, Civil, No.

5.01 (1995)) if the retaining party fails to call the expert.

     On the first point, the court ruled that experts are not the

agents of those who employ them and therefore experts' statements

are not admissions by those who retain them.  On the second point,

the court acknowledged that the instruction may be proper (Scha-

ffner v. Chicago & North Western Transportation Co., 129 Ill. 2d 1,

541 N.E.2d 643 (1989)), but the court held that, if the original

employer of the expert abandons the expert sufficiently in advance

of trial that the opposing party is made aware of it and can act on

the abandonment, then the instruction can be refused.

     We acknowledge that Taylor does not specifically address the

issue before us, but we conclude that the supreme court would

reason that allowing the disclosure of the identity of an expert's

original employer would not be considered an abuse of discretion

under the circumstances of this case except for one factor, and

that factor is the line of cases, including a case from this

district (Department of Transportation v. Gonterman, 41 Ill. App.

3d 62, 354 N.E.2d 76 (1976)), in the owners' favor at the time this

case was tried.  Counsel for the owners contends, without any

challenge, that he could have avoided the disclosure of Seppi's

retention by naming him a "consultant" instead of an "expert" under

Rule 220 or an "opinion witness" under Rule 220's successor

provision.  134 Ill. 2d R. 213; Official Reports Advance Sheet No.

20 (September 27, 1995), R. 213, effective January 1, 1996. 

Counsel also contends, again without challenge, that he would not

have disclosed Seppi but for his reliance upon the cases, including

Gonterman, that we have refused to follow.  Under these circum-

stances, we conclude that it was not appropriate for the trial

court to allow the original retention of the expert Seppi by the

owners to be disclosed to the jury, and on remand that should not

be allowed. 

                          Strike Expert Testimony

     The owners next argue that the court erred in denying their

motion to strike the testimony of Albert Seppi, an appraiser called

by the County, because Seppi improperly reached his conclusion by

adding together a separate appraised value for the land and for the

improvements on the land.  The County responds that the appraiser

valued the unit as a whole and therefore the court did not err in

denying the owners' motion to strike Seppi's testimony.  

     In eminent domain cases, the measure of recovery for damage to

private property caused by a public improvement is the loss of

value to the property as a whole (Department of Public Works &

Buildings v. Lotta, 27 Ill. 2d 455, 456, 189 N.E.2d 238, 240 (1963)

(citing County Board of School Trustees of Ogle County v. Elliott,

14 Ill. 2d 440, 152 N.E.2d 873 (1958)) and is not the sum of the

value of the building and the value of the land computed separate-

ly.  Lotta, 27 Ill. 2d at 456, 189 N.E.2d at 240; Department of

Transportation v. White, 264 Ill. App. 3d 145, 150, 636 N.E.2d

1204, 1208 (1994).  This rule is based on the principle that "`the

fair cash market value of improved real estate is not necessarily

a total of the separate land and building appraisals.'"  Lotta, 27

Ill. 2d at 457, 189 N.E.2d at 240 (quoting City of Chicago v.

Giedraitis, 14 Ill. 2d 45, 51, 150 N.E.2d 577, 580 (1958)).  For

example, the value of unimproved land adaptable to a multitude of

uses may diminish when a building is erected and commits the land

to a particular use.  Lotta, 27 Ill. 2d at 456-57, 189 N.E.2d at

240.  Similarly, a building may not be worth the cost to build it

if the location is not a desirable location.  Lotta, 27 Ill. 2d at

457, 189 N.E.2d at 240.  Illinois courts have repeatedly held that

it is improper to present appraisal testimony which applies

separate dollar values to the land and the improvements on the

land, because of concern that such testimony could mislead or

confuse the jury.  See Department of Transportation v. Schlechte,

94 Ill. App. 3d 187, 190, 418 N.E.2d 1000, 1002 (1981).

     In this case, the record supports the County's argument that

appraiser Seppi did not first assign separate values to the

improvements on the owners' property and to the land and then

merely add these values together to reach the total appraisal

value.  On cross-examination, Seppi vehemently and consistently

denied such behavior.  

     In making its ruling to deny the striking of Seppi's testimo-

ny, the trial court said:

     "The Court is satisfied that, unequivocally, Mr. Seppe

     [sic] has responded to your questions, and has been

     steadfast in his position that he valued this property as

     a whole, that his methodology was valuation as a whole." 

     We find nothing in the record to suggest that the court abused

its discretion on this point.

                           Baricevic's Testimony

     The owners next argue that the court erred in barring the

testimony of John Baricevic, St. Clair County Board Chairman and

former State's Attorney, concerning alleged statements he made

before the St. Clair County Farm Bureau.  The court granted the

County's motion in limine seeking to preclude statements made by

John Baricevic to the farm bureau concerning the joint-use airport. 

The owners argue that the statement was inconsistent with the

County's position at trial because the County's appraisers had all 

concluded that the highest and best use of the property was

agricultural.  The owners argue that the statements attributed to

Baricevic should have been admissible as an admission.   

     The statement was not an admission by a party opponent because

the alleged statement does not specifically relate to the owners'

property.  "As a general rule any statement, written or not, made

by a party or in his behalf which was inconsistent with his present

position may be introduced into evidence against him."  Nelson v.

Union Wire Rope Corp., 31 Ill. 2d 69, 115, 199 N.E.2d 769, 794

(1964).  However, the statement does not specifically relate to the

owners' property.  Baricevic's alleged statements were reported in

the "Farm Bureau Notes of St. Clair County", a newsletter published

in March 1991, bearing a subscription price of 75 cents.  An

article entitled "Current Issues" reported on issues discussed at

a meeting between local farm bureau leaders and County Board

Chairman Baricevic.  The article did not quote Baricevic but merely

summarized what the reporter recollected.  The article stated in

relevant part:

          "The group questioned Baricevic on the County's

     plans to use eminent domain for airport land acquisition. 

     Baricevic said that the County has budgeted for land

     acquisition at its highest and best use rather than at

     its agricultural value.  He said realtors indicate that

     land in the area, depending on its location relative to

     major roads, is now bringing a price of between $6,500

     and $10,000 an acre."

     This statement is not inconsistent with the County's position

at trial.  The evidence in this case shows that there were over 100

parcels of land to be acquired for the joint-use project.  As

Baricevic's alleged statement suggests, all parcels were valued

according to their own merits.  The statement does not indicate

which parcels Baricevic was discussing.  Accordingly, we cannot say

that the trial court erred in refusing to admit this testimony.

     In view of the fact that the matter is being reversed and

remanded on the first two issues, the last two issues, numbers five

and six, require little discussion.

                          Post-Filing Activities

     As to issue five, the parties agree that property is to be

valued as of the date of filing the complaint to condemn. 

Therefore, inquiry into postfiling activity should be avoided

during the retrial of this matter.

                             Source of Funding

     Finally, as to issue number six, the parties agree that the

statements made by Mr. Lunte about the source of funding for the

property were inappropriate, and they should not recur on retrial.

     In summary, we reverse on issues one and two and remand for a

new trial.

     Reversed and remanded.

     WELCH, J., and GOLDENHERSH, J., concur.

                                 NO. 5-95-0540

                                     IN THE

                          APPELLATE COURT OF ILLINOIS

                                 FIFTH DISTRICT

___________________________________________________________________________

THE COUNTY OF ST. CLAIR, A Municipal  )  Appeal from the

Corporation,                          )  Circuit Court of

                                      )  St. Clair County.  

     Plaintiff-Appellee,              )   

                                      )

v.                                    )  No. 93-ED-15

                                      )   

NANCY WILSON, ELEANOR GOETTE,         ) 

EDGAR ENSLIN, PAUL HAAS,              )

St. Clair County Treasurer, and       )

UNKNOWN OWNERS,                       )  Honorable

                                      )  James M. Radcliffe,

     Defendants-Appellants.           )  Judge, presiding.

___________________________________________________________________________

Opinion Filed:                  October 9, 1996

___________________________________________________________________________

Justices:      Honorable Charles W. Chapman, J.

                         

               Honorable Thomas M. Welch, J., and 

               Honorable Richard P. Goldenhersh, J.,

               Concur

___________________________________________________________________________

                         

Attorney       Harry J. Sterling, Harry J. Sterling, P.C., #6 Canty 

for            Lane, Fairview Heights, IL 62208

Appellant      

___________________________________________________________________________

Attorneys      Bernard J. Ysursa, Cook, Shevlin, Ysursa, Brauer & 

for            Bartholomew, Ltd., 12 West Lincoln Street, Belleville, IL 

Appellee       62220-2085

___________________________________________________________________________