THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellant, *v.* FLOYD E. HALL *et al.*, Defendants-Appellees.

(No. 74-126;

Second District (2nd Division)—August 4, 1975.

William J. Scott, Attorney General, of Springfield (Thomas J. Banbury, Noel C. Davis, and Roy E. Frazier, Assistant Attorneys General, of counsel), for appellant.

Matthews, Jordan, Dean, Eichmeier & Petersen, of Aurora (Roger W. Eichmeier and Stephen J. Mrkvicka, of counsel), for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal by the Department of Public Works of the State of Illinois ("State") from judgment for $48,800 as just compensation on a jury verdict in a condemnation case. The State has presented these issues: (1) whether the trial court erred in denying the State's motion *in limine* seeking to bar testimony that would disclose the prior employment relationship for the State of Illinois of two appraisers, Coleman and Curtis, called to testify for defendants; (2) whether defendants established reasonable probability of rezoning the farm property to a planned unit development so as to render admissible appraiser Coleman's opinion as to its value; (3) whether appraiser Coleman's testimony as to damages to the remainder considered improper elements of damage; (4) whether the trial court erred in permitting defendants at the commencement of trial to file their cross-petition for damages to the remainder; and (5) whether the court erred in admitting into evidence certain photographs.

Defendants' property was located on the north and south sides of Illinois Route 30 in Sugar Grove Township in Kane County, Illinois. The extension of the Illinois East-West Tollway bisects defendants' property and crosses Route 30. The State desired to widen existing Route 30 and to construct entrance and exit ramps between the two roads, and filed this eminent domain proceeding for that purpose. Two different tracts were involved. From the first parcel, a farm, the State needed to acquire 17.579 acres in fee simple, and .392 acre as a 2-year temporary construction easement. The second parcel was a residence property on the south side of Route 30 from which the State needed to acquire a strip consisting of .322 acre in fee simple, and a 2-year temporary construction easement as to .128 acre.

On August 19, 1968, 1 month after the State filed its amended complaint, the State filed its motion for immediate vesting of title. On October 3, 1968, the parties stipulated to preliminary just compensation of $44,800 for the farm property and $5,500 for the residence property. The State deposited these sums and became vested with title and defendants drew these amounts from the clerk of court.

During pretrial discovery the State informed defendants' attorney that appraisers Coleman and Curtis had appraised the subject property for the State but would not be called by them to testify. Defendants thereupon subpoenaed the witnesses to testify on behalf of defendants as to their opinions of value. The State on October 22, 1973, filed its motion *in limine* to prohibit defendants' attorney from indicating to the jury their prior employment by the State to appraise the property, and that Coleman and Curtis be instructed that they were barred from indicating that the State had hired them. The trial court denied the State's motion.

At the start of trial, but prior to *voir dire,* the State orally moved in chambers to bar defendants from introducing any proof of damages to the remainder on the ground that defendants had failed to file a cross-petition for such damages. Defendants then orally moved for leave to file such cross-petition setting forth the remainder of the property that had been damaged. The trial court denied the State's motion and granted defendants leave to file their cross-petition which defendants did on October 24, 2 days after the trial started.

The State's only valuation witness was Mr. Gerald Fahrner who had made the original appraisal for the State. Defendants called the State's two appraisers, James Coleman and James Curtis, making several references to the jury to their prior employment by the State as appraisers of the subject property and called also their own appraiser, Edward Kyser.

The opinions as to values made by the various appraisers of the farm

property and the residence property and as damages to the remainder, respectively, and the jury verdict are as follows:

| Farm Property: | Fahrner | Coleman | Curtis | Kyser | Jury Verdict |
|---|---|---|---|---|---|
| Part taken (17.579 A.) & easement (.392 A.) | $27,500. | $27,669. | $34,000. | $39,250. | $27,500. |
| Damages to remainder | 1,000. | 19,445. | 5,000. | 9,800. | 15,000. |
| Totals | 28,500. | 47,114. | 39,000. | 49,050. | 42,500. |
| Residence Property: | | | | | |
| Part taken (.322 A.) & easement (.128 A.) | 2,800. | 1,992. | 2,400. | 2,850. | 2,800. |
| Damages to remainder | 2,200. | 6,597. | 3,000. | 3,000. | 3,500. |
| Totals | 5,000. | 8,589. | 5,400. | 5,850. | 6;300. |
| Total Award: | | | | | |
| Farm Property | 42,500. | | | | |
| Residence Property | 6,300. | | | | |
| Grand Total | 48,800. | | | | |

■■ We first consider the trial court's denial of the State's motion for an order *in limine* to bar disclosure of the State's prior employment of appraisers Coleman and Curtis. In *Department of Public Works & Buildings v. Guerine,* 19 Ill.App.3d 509, we had occasion to consider that question. There the trial court had excluded from the jury testimony as to the appraiser's prior employment relationship with the landowner's attorney in regard to the property there in question. In holding that such testimony was properly excluded we stated these reasons:

"Firstly, introduction of this fact would certainly arouse the jury's emotions of prejudice. [Citations.] And secondly, by allowing petitioner to reveal to the jury evidence of Dunn's prior employment relationship, the landowners would then necessarily have the opportunity to explain why they did not call Dunn to testify as to his appraisal. [Citation.] This would result in the creation of a col-

lateral issue that would unduly distract the jury from the main issue of determining just compensation.

Similarly, it is an established rule in the law of eminent domain that the fact that one of the testifying witnesses has been appointed by the court to appraise the subject property should not be revealed to the jury. [Citations.]" 19 Ill.App.3d 509, 513.

Defendants argue that the State owes a duty to the landowner in eminent domain proceedings to place before the jury all opinions of value acquired by the Attorney General in preparation for trial. We decline defendants' invitation to carve out an exception to our holding in *Guerine* so as to make it inapplicable to appraisements obtained by the State which for one reason or another it has no confidence in or would prefer not to use. In *State v. Biggers* (Tex. 1962), 360 S.W.2d 516, 517, the Supreme Court of Texas, in approving the trial court's refusal to permit the landowners-respondents to prove that the witness was employed by the State Highway Department of Texas to make an appraisal of the land taken in eminent domain proceedings, said:

"That proof could have no relevancy to the issues in the case. As we view the matter, its tender could only be for the purpose of supporting the credibility of the witness or of creating the impression with the jury that the State was suppressing evidence. It would not be admissible for either purpose."

We find no basis for applying a different rule to the State than to the landowner-respondents.

Defendants then seek to escape our holding in *Guerine* by arguing that because we affirmed the trial court's rejection of such evidence, the opinion does not expressly hold that its admission constitutes error so prejudicial as to require reversal and remandment for a second trial. In so arguing defendants point to the fact that the jury verdict was within the range of evidence. The jury in the case at bar was specifically instructed, as they should be in condemnation cases, that: "The amount of your verdict must be within the range of the evidence. It cannot be more than the highest figure nor less than the lowest figure testified to by the witnesses." Under the circumstances here it is unnecessary to indulge in what would be sheer speculation as to the effect on the award by the jury of the disclosure to them of Coleman's and Curtis' prior employment relationship to the State.

■■ We next consider the State's contention that Coleman's testimony as to value of the farm property should have been stricken because it was based on its highest and best use as a planned unit development and without any showing by the defendants of the probability of rezoning for that use. Our examination of the record discloses that while Coleman

testified that a planned unit development was being constructed north of the property there was no evidence of a probability of such rezoning for the subject property. Valuation witnesses must relate their testimony to a reasonable probability of rezoning if the use upon which the market value is based is not permitted under existing zoning restrictions. (*Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill.App.2d 1. See also *Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.*, 29 Ill.App.3d 145.) The mere fact that property north of this tract was being developed as a planned unit development is not sufficient to prove reasonable probability of rezoning of defendants' property for such use from its existing agricultural zoning. The trial court therefore erred in overruling the State's objection and in refusing to strike Coleman's testimony as to valuation which was based on his statement that the highest and best use is for planned unit development.

The State further contends that Coleman's testimony as to valuation of damages to the remainder of the residence property should have been stricken because it was "damaged esthetically from a buyer's viewpoint," and his later statement which included the farm. However, in explaining what he meant Coleman said:

"THE WITNESS [Coleman]: I considered the cut of the highway, and the depth. I thought it put the buildings to a disadvantage particularly the accessibility to which trucks and farm machinery are going to have a hard time negotiating the tortuous driveway, especially in the wintertime. I thought that it would be at a disadvantage for anyone in the future who may contemplate development of the farm—its steep cut through there would certainly not enhance the value of the property. In fact, it would do the opposite in my opinion. And also the proximity of the highway to the buildings, particularly the remaining farm house."

From the foregoing it is obvious that the witness was considering proper elements of damage to the remainder when he referred to "esthetics."

■■ Under the circumstances here the trial court properly gave leave to defendants to file their cross-petition for damages to the remainder when the trial commenced. The record discloses that on October 3, 1968, when the order for immediate vesting of title was entered upon stipulation of the parties as to preliminary just compensation, they stipulated that the property sought to be condemned was properly described in the amended complaint and that in determining preliminary just compensation the sum determined included any damage to the remainder. Thus, there was no element of surprise to the State and it was not prejudiced by the trial court's granting the defendants leave to file their cross-petition.

■■ Finally, we consider the State's contention of error in the admission of three photographs of the subject property taken while construction of the highway improvement was in progress which showed piles of dirt, construction equipment in disorder, and of four other exhibits. The latter are commercial black and white photographs of the residence and farm properties taken before and after acquisition which were retouched with colors by the photographer for purposes of sale to people in the vicinity. All these photographs were introduced in evidence after foundation testimony that they were true and accurate portrayals of that which they purported to show. The State had ample opportunity to impeach them if they were not accurate representations. We are therefore unable to say that the trial court abused its discretion in admitting these photographs into evidence. *Darby v. Checker Co.*, 6 Ill.App.3d 188, 197.

For the reasons stated the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

T. MORAN and DIXON, JJ., concur.