THE COUNTY OF ST. CLAIR, Plaintiff-Appellee, v. NANCY WILSON *et al.*, Defendants-Appellants.

Fifth District    No. 5—95—0540

Opinion filed October 9, 1996.

Harry J. Sterling, of Harry J. Sterling, P.C., of Fairview Heights, for appellants.

Bernard J. Ysursa, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On September 29, 1993, plaintiff, St. Clair County (the County), filed an eminent domain action to acquire 65.11 acres of land from defendants Nancy Wilson, Eleanor Goette, and Edgar Enslin, Jr. (owners). The land borders Scott Air Force Base (the base) in St. Clair County, Illinois, and the owners' property is one of about 100 properties the County has sought to condemn for the development of a joint-use airport that is to be located on the base. The central issue at trial was the fair market value of the owners' 65.11 acres. After hearing the testimony from the six appraisal experts, who espoused values ranging from $210,000 to $600,000, the jury returned a verdict of $250,000.

The owners raise six arguments: (1) the court erred in barring the testimony of a bank manager concerning offers to purchase a parcel of land near the land at issue; (2) the court erred in denying the owners' motion *in limine* which sought to prevent the jury from learning that the County's appraiser had previously been retained by the owners in the same matter; (3) the court erred in denying the owners' motion to strike the testimony of one of the County's appraisers because he improperly reached his conclusion; (4) the court

erred in barring the testimony of one of the owners' witnesses on alleged admissions made by the county board chairman before the St. Clair County Farm Bureau; (5) the court erred in permitting the County's attorney to inquire about the possible post-filing closing of the nearby Air Force base; and (6) the owners are entitled to a new trial because the County violated its own order *in limine* when one of its witnesses testified to the source of funding for the property at issue.

## BARRING TESTIMONY OF OFFERS TO PURCHASE

The owners first argue that the court erred in barring the testimony of Dan Davis, the vice-president and farm manager for Magna Trust Company. Magna Trust was the guardian of the Boettcher estate, which owned 82.25 acres of vacant land immediately west of the property at issue. At the May 1, 1995, pretrial conference, the County's attorney moved to bar Davis's testimony concerning offers Davis received from third parties to purchase some or all of the 82.25 acres from the Boettcher estate. The County argued that, in eminent domain cases, data of comparable sales, rather than mere offers to purchase, must be used by courts to determine the value of property. The County concedes that in some cases evidence of offers to purchase has been admitted, but, the County points out, those offers to purchase concerned the subject property only, and the County urges this court not to extend that narrow exception.

The owners argued that evidence of offers to purchase adjacent property, which is similar in size and location and uses the same utilities and fronts on the same roads as the subject property, should have been presented to the jury. The trial court agreed with the County and barred Davis's testimony. We reverse the trial court's grant of the County's oral motion *in limine* regarding the introduction of evidence of offers to purchase made on the Boettcher estate property.

■ In an eminent domain proceeding, the only question for a jury to determine is the just compensation to be paid to the owner of the property sought to be condemned. *Department of Transportation v. White*, 264 Ill. App. 3d 145, 149, 636 N.E.2d 1204, 1208 (1994). Just compensation is defined as the fair market value of the property at its highest and best use on the date the complaint was filed. *Department of Transportation ex rel. People v. Central Stone Co.*, 200 Ill. App. 3d 841, 843, 558 N.E.2d 742, 744 (1990). Fair market value is the amount of money that a willing buyer under ordinary circumstances would pay to a willing owner in a voluntary sale, where neither party is under any obligation to buy or sell. *People ex rel. Depart-*

*ment of Transportation v. Birger*, 155 Ill. App. 3d 130, 134, 507 N.E.2d 1321, 1324 (1987).

■ In *Department of Public Works & Buildings v. Lambert*, 411 Ill. 183, 191, 103 N.E.2d 356, 360 (1952), the Illinois Supreme Court stated:

> "The rule is established in this State that, *in the absence of evidence of actual sales, bona fide* offers to purchase for cash by persons able to buy are some evidence of what the property would sell for." (Emphasis added.)

The County relies upon the emphasized language and argues that because the County offered evidence of actual sales of similar property, evidence of offers made on similar property was not admissible. In addition, the County argues that even if evidence of *bona fide* offers to purchase the Boettcher property were admissible, the offers the owners wanted to introduce were not *bona fide*.

■ The owners argue that Rule 703 of the Federal Rules of Evidence, as adopted by the Illinois Supreme Court in *Wilson v. Clark*, 84 Ill. 2d 186, 417 N.E.2d 1322 (1981), makes evidence of *bona fide* offers to purchase admissible. Rule 703 states:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon a subject, the facts or data need not be admissible in evidence." Fed. R. Evid. 703.

Both parties rely on *City of Chicago v. Anthony*, 136 Ill. 2d 169, 554 N.E.2d 1381 (1990), for their respective positions. The owners focus on a single sentence in *Anthony*:

> "Rule 703 was intended to 'bring the judicial practice into line with the practice of the experts themselves when not in court.' " *Anthony*, 136 Ill. 2d at 184, 554 N.E.2d at 1388, quoting Fed. R. Evid. 703, Advisory Committee's Note.

The owners argue that to prohibit the jury from hearing evidence of the offers to purchase, when the appraisers testified they would have considered them in forming their valuation of the subject property had they known about them, was not "in line with the practice of the experts themselves when not in court."

The County relies on another portion of *Anthony*:

> "If another rule of law applicable to the case excludes the information sought to be relied upon by the expert, the information may not be permitted to come before the jury under the guise of a basis for the opinion of the expert.
>
> \*\*\*
>
> In this case, it is eminent domain law which controls the admis-

sibility of evidence for its truth as well as for the limited purpose of explaining the basis for an expert's opinion pursuant to Rule 703." *Anthony*, 136 Ill. 2d at 186-87, 554 N.E.2d at 1389.

The justification for Rules 703 and 705 (Fed. R. Evid. 705) is discussed in McCormick on Evidence:

> "[U]nder Rule 703 (and Rule 705) an expert may give a direct opinion upon facts and data, including reports, which are inadmissible or not introduced into evidence, provided the reports or other data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' This view is justified on the ground that an expert in a science is competent to judge the reliability of statements made to him by other investigators or technicians. He is just as competent indeed to do this as a judge and jury are to pass upon the credibility of an ordinary witness on the stand. If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand, and this argument is reinforced when the opinion is founded not only upon reports but also in part upon the expert's firsthand observation. The data of observation will usually enable the expert to evaluate the reliability of the statement." 1 J. Strong, McCormick on Evidence § 15, at 64-65 (4th ed. 1992).

In *Anthony*, an eminent domain case, the supreme court held that it was for the trial court, in its discretion, to determine whether the underlying facts upon which an expert based an opinion were of a type reasonably relied upon by experts in their field. In this case, all of the experts on both sides indicated that *bona fide* offers to purchase property such as the Boettcher estate tract would be relied upon by them in evaluating the property at issue. No one indicated that such offers were not reliable. Under these circumstances, we conclude that the trial court abused its discretion in excluding all the offers.

The admission of testimony about offers to purchase is not dependent upon the presence or absence of evidence of comparable sales figures. Evidence of comparable sales data may be of superior quality in some cases, but its mere presence does not automatically exclude evidence of offers to purchase. The question to be addressed is not whether comparable sales data were available; it is whether the offers to purchase were such that they would meet the requirements of Rules 703 and 705. If they were, they should be allowed. See *Department of Transportation v. Beeson*, 137 Ill. App. 3d 908, 485 N.E.2d 511 (1985).

The County contends that, even if the offers to purchase met the requirements of Rules 703 and 705, they were properly excluded because the owners did not prove that they were *bona fide* offers to purchase. An offer is *bona fide* when it is made in good faith, by a person of good .judgment, who is acquainted with the value of real estate and possesses a sufficient ability to pay. *Anthony*, 136 Ill. 2d at 188, 554 N.E.2d at 1390. The offer must be for cash, rather than for credit or in exchange, and it must be made with reference to the property's fair market value. *Anthony*, 136 Ill. 2d at 188, 554 N.E.2d at 1390, quoting *City of Chicago v. Harrison-Halsted Building Corp.*, 11 Ill. 2d 431, 438, 143 N.E.2d 40, 45 (1957).

At the time the court granted the County's motion *in limine*, the only evidence of the *bona fide* nature of the offers to purchase was Davis's affidavit stating that the offers were *bona fide*. To the extent that the court's ruling was based upon a finding that the offers to purchase were not *bona fide*, that finding was against the manifest weight of the evidence.

## EXPERT PREVIOUSLY RETAINED BY OWNERS

The owners' second argument is that the court erred in denying their motion *in limine* which sought to prevent the jury from learning that Albert Seppi, an appraiser called by the County at trial, had previously been retained by the owners in the same matter. The County argued that appraisers are expert witnesses and are subject to the same rules as any other expert. Furthermore, according to the County, the issue of which side retained an expert goes to the expert's credibility and should therefore be admissible.

The eminent domain cases that have previously dealt with this issue have held that it is proper to exclude the fact that an appraiser was originally retained by the opposing party who decided not to call the appraiser as a witness. See *Department of Business & Economic Development v. Schoppe*, 1 Ill. App. 3d 313, 272 N.E.2d 696 (1971); *Department of Public Works & Buildings v. Guerine*, 19 Ill. App. 3d 509, 311 N.E.2d 722 (1974); *Department of Public Works & Buildings v. Exchange National Bank*, 40 Ill. App. 3d 623, 356 N.E.2d 376 (1976); *Department of Public Works & Buildings v. Hall*, 30 Ill. App. 3d 831, 333 N.E.2d 701 (1975); *Department of Transportation v. Gonterman*, 41 Ill. App. 3d 62, 354 N.E.2d 76 (1976).

*Department of Public Works & Buildings v. Guerine*, 19 Ill. App. 3d 509, 311 N.E.2d 722 (1974), was the first case to discuss this issue in depth. *Guerine* provided two reasons why a court did not err in granting a motion *in limine* when the opposing party originally hired the appraiser. *Guerine*, 19 Ill. App. 3d at 513-14, 311 N.E.2d at 725-

26. First, introduction of the appraiser's prior employment relationship could arouse the jury's emotions of prejudice, and second, it could create a collateral issue that would distract the jury from the main issue of determining just compensation. *Guerine*, 19 Ill. App. 3d at 513-14, 311 N.E.2d at 725-26. *Guerine* acknowledged that there is arguably some probative value in the admission of an expert appraisal witness's prior employment relationship with one of the parties, but the court stated that any probative value was outweighed by the prejudice and the creation of collateral issues caused by the testimony. *Guerine*, 19 Ill. App. 3d at 513-14, 311 N.E.2d at 725-26.

*Guerine* and the line of cases that follow it were all decided before the Illinois Supreme Court adopted Supreme Court Rule 220 (103 Ill. 2d R. 220). Rule 220 was repealed by an order entered June 1, 1995, to be effective on January 1, 1996, but the amended rules do not differ in their demand that experts be disclosed. Compare 134 Ill. 2d R. 220 with Official Reports Advance Sheet No. 20 (September 27, 1995), R. 220, eff. January 1, 1996. Rule 220 and its successor provisions of the supreme court's rules on the discovery of experts do not distinguish between types of cases on the issue of expert identification and disclosure. The rules apply equally to all types of cases. We therefore decline to follow *Guerine* and the line of cases that follow it, all of which create a different rule for appraisal experts in eminent domain cases. We see no reason to treat them differently from other experts. See *Beeson*, 137 Ill. App. 3d 908, 485 N.E.2d 511.

What is the general rule when one party retains an expert and decides not to call the expert, who is then called by an adverse party? Can the employment by the original party be disclosed to the jury? We believe that such a disclosure is appropriate as a general rule. In *Taylor v. Kohli*, 162 Ill. 2d 91, 642 N.E.2d 467 (1994), the supreme court addressed both the agency status of experts and the appropriateness of giving the missing-witness instruction (see Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989)) if the retaining party fails to call the expert.

On the first point, the court ruled that experts are not the agents of those who employ them and therefore experts' statements are not admissions by those who retain them. On the second point, the court acknowledged that the instruction may be proper (*Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 541 N.E.2d 643 (1989)), but the court held that, if the original employer of the expert abandons the expert sufficiently in advance of trial that the opposing party is made aware of it and can act on the abandonment, then the instruction can be refused.

■ We acknowledge that *Taylor* does not specifically address the

issue before us, but we conclude that the supreme court would reason that allowing the disclosure of the identity of an expert's original employer would not be considered an abuse of discretion under the circumstances of this case except for one factor, and that factor is the line of cases, including a case from this district (*Department of Transportation v. Gonterman*, 41 Ill. App. 3d 62, 354 N.E.2d 76 (1976)), in the owners' favor at the time this case was tried. Counsel for the owners contends, without any challenge, that he could have avoided the disclosure of Seppi's retention by naming him a "consultant" instead of an "expert" under Rule 220 or an "opinion witness" under Rule 220's successor provision. 134 Ill. 2d R. 213; 166 Ill. 2d R. 213. Counsel also contends, again without challenge, that he would not have disclosed Seppi but for his reliance upon the cases, including *Gonterman*, that we have refused to follow. Under these circumstances, we conclude that it was not appropriate for the trial court to allow the original retention of the expert Seppi by the owners to be disclosed to the jury, and on remand that should not be allowed.

## STRIKE EXPERT TESTIMONY

The owners next argue that the court erred in denying their motion to strike the testimony of Albert Seppi, an appraiser called by the County, because Seppi improperly reached his conclusion by adding together a separate appraised value for the land and for the improvements on the land. The County responds that the appraiser valued the unit as a whole and therefore the court did not err in denying the owners' motion to strike Seppi's testimony.

■ In eminent domain cases, the measure of recovery for damage to private property caused by a public improvement is the loss of value to the property as a whole (*Department of Public Works & Buildings v. Lotta*, 27 Ill. 2d 455, 456, 189 N.E.2d 238, 240 (1963), citing *County Board of School Trustees of Ogle County v. Elliott*, 14 Ill. 2d 440, 152 N.E.2d 873 (1958)) and is not the sum of the value of the building and the value of the land computed separately. *Lotta*, 27 Ill. 2d at 456, 189 N.E.2d at 240; *Department of Transportation v. White*, 264 Ill. App. 3d 145, 150, 636 N.E.2d 1204, 1208 (1994). This rule is based on the principle that " 'the fair cash market value of improved real estate is not necessarily a total of the separate land and building appraisals.' " *Lotta*, 27 Ill. 2d at 457, 189 N.E.2d at 240, quoting *City of Chicago v. Giedraitis*, 14 Ill. 2d 45, 51, 150 N.E.2d 577, 580 (1958). For example, the value of unimproved land adaptable to a multitude of uses may diminish when a building is erected and commits the land to a particular use. *Lotta*, 27 Ill. 2d at 456-57, 189 N.E.2d at 240.

Similarly, a building may not be worth the cost to build it if the location is not a desirable location. *Lotta*, 27 Ill. 2d at 457, 189 N.E.2d at 240. Illinois courts have repeatedly held that it is improper to present appraisal testimony that applies separate dollar values to the land and the improvements on the land, because of concern that such testimony could mislead or confuse the jury. See *Department of Transportation v. Schlechte*, 94 Ill. App. 3d 187, 190, 418 N.E.2d 1000, 1002 (1981).

■ In this case, the record supports the County's argument that appraiser Seppi did not first assign separate values to the improvements on the owners' property and to the land and then merely add these values together to reach the total appraisal value. On cross-examination, Seppi vehemently and consistently denied such behavior.

In making its ruling to deny the striking of Seppi's testimony, the trial court said:

> "The Court is satisfied that, unequivocally, Mr. Seppe [*sic*] has responded to your questions, and has been steadfast in his position that he valued this property as a whole, that his methodology was valuation as a whole."

We find nothing in the record to suggest that the court abused its discretion on this point.

## BARICEVIC'S TESTIMONY

The owners next argue that the court erred in barring the testimony of John Baricevic, St. Clair County Board chairman and former State's Attorney, concerning alleged statements he made before the St. Clair County Farm Bureau. The court granted the County's motion *in limine* seeking to preclude statements made by John Baricevic to the farm bureau concerning the joint-use airport. The owners argue that the statement was inconsistent with the County's position at trial because the County's appraisers had all concluded that the highest and best use of the property was agricultural. The owners argue that the statements attributed to Baricevic should have been admissible as an admission.

■ The statement was not an admission by a party opponent because the alleged statement does not specifically relate to the owners' property. "As a general rule any statement, written or not, made by a party or in his behalf which is inconsistent with his present position may be introduced into evidence against him." *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 115, 199 N.E.2d 769, 794 (1964). However, the statement does not specifically relate to the owners' property. Baricevic's alleged statements were reported in the "Farm Bureau Notes of St. Clair County," a newsletter published in March

1991, bearing a subscription price of 75 cents. An article entitled "Current Issues" reported on issues discussed at a meeting between local farm bureau leaders and County Board Chairman Baricevic. The article did not quote Baricevic but merely summarized what the reporter recollected. The article stated in relevant part:

> "The group questioned Baricevic on the County's plans to use eminent domain for airport land acquisition. Baricevic said that the County has budgeted for land acquisition at its highest and best use rather than at its agricultural value. He said realtors indicate that land in the area, depending on its location relative to major roads, is now bringing a price of between $6,500 and $10,000 an acre."

This statement is not inconsistent with the County's position at trial. The evidence in this case shows that there were over 100 parcels of land to be acquired for the joint-use project. As Baricevic's alleged statement suggests, all parcels were valued according to their own merits. The statement does not indicate which parcels Baricevic was discussing. Accordingly, we cannot say that the trial court erred in refusing to admit this testimony.

In view of the fact that the matter is being reversed and remanded on the first two issues, the last two issues, numbers five and six, require little discussion.

## POST-FILING ACTIVITIES

As to issue five, the parties agree that property is to be valued as of the date of filing the complaint to condemn. Therefore, inquiry into post-filing activity should be avoided during the retrial of this matter.

## SOURCE OF FUNDING

Finally, as to issue number six, the parties agree that the statements made by Mr. Lunte about the source of funding for the property were inappropriate, and they should not recur on retrial.

In summary, we reverse on issues one and two and remand for a new trial.

Reversed and remanded.

WELCH and GOLDENHERSH, JJ., concur.