2023 IL App (1st) 220130-U

SIXTH DIVISION
March 10, 2023

No. 1-22-0130

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LAKEVIEW EAST COOPERATIVE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 M1 704999 |
| | ) | |
| ESTHER OHIKU, ODALO OHIKU, and UNKNOWN OCCUPANTS, | ) | Honorable |
| | ) | Jean M. Golden, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

## ORDER

¶ 1    *Held*:  Where a cooperative housing association seeking to evict its former board president failed to rebut evidence establishing compliance with the occupancy agreement with counterevidence sufficient to create a genuine issue of material fact, summary judgment in her favor was proper.

¶ 2    Plaintiff Lakeview East Cooperative (Lakeview East), a cooperative housing association, sought to evict its board president, defendant Esther Ohiku, on the grounds that she violated her occupancy agreement by failing to continuously use her unit in the cooperative's building as her primary residence. The parties filed cross-motions for summary judgment on this issue. In support

of her motion, Ms. Ohiku provided affidavits, voter registration records, and tax documents evidencing her continuous residency. Lakeview East countered that evidence with the documents it had attached to its complaint: (1) a mortgage agreement showing that when Ms. Ohiku signed as the borrower for the purchase of a condominium for her adult son and his family, she promised to occupy that property as her principal residence and (2) statements Ms. Ohiku purportedly made during a 2017 audit conducted by the Office of the Inspector General for the Department of Housing and Urban Development (HUD OIG), which were included in an unauthenticated report prepared by employees of that agency.

¶ 3    The circuit court ruled that without a proper foundation, the report prepared by HUD OIG, and any statements therein purportedly made by Ms. Ohiku, were inadmissible. Even if the report could be considered, the court concluded, Lakeview East's rebuttal evidence was insufficient to raise a genuine issue of material fact regarding Ms. Ohiku's continuous residency. The mortgage documents showed, at most, that she promised to make another property her primary residence, not that she ever actually did so, and the statements in the report that Lakeview East sought to rely on were the same ones the cooperative had insisted were inaccurate in its contemporaneous response to the auditors.

¶ 4    Lakeview East now appeals. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                I. BACKGROUND

¶ 6 Lakeview East owns and operates the apartment complex located at 707 W. Waveland Avenue (Waveland Avenue property) in Chicago through a land-grant agreement with HUD. Ms. Ohiku has lived in that building since the 1970s, when it was operated by HUD as subsidized housing, and has served in several capacities on the cooperative's board, including most recently

as its president. Lakeview East notified Ms. Ohiku on February 28, 2019, that it was terminating her right of occupancy to Unit 511 of the Waveland Avenue property, citing alleged violations of her duties as board president, misuse of funds, and Ms. Ohiku's failure to maintain the unit as her primary residence. Soon after, Lakeview East initiated this eviction action against Ms. Ohiku, her son Odalo, and any unknown occupants of Unit 511. The circuit court dismissed the cooperative's breach of duty and misappropriation claims without prejudice, concluding that they were not germane to the issue of possession. Lakeview East refiled those claims independently, and we understand they have been resolved by agreement of the parties. They are not a part of this appeal.

¶ 7    The only remaining issue in this case was Ms. Ohiku's right to possess her unit in the Waveland Avenue property. Lakeview East attached to its complaint the occupancy agreement Ms. Ohiku had signed and agreed to abide by as a condition of possession. Paragraph 7 of that agreement provided as follows:

"7. Occupancy Requirements/No Subletting.

a. Occupancy. Lessee hereby agrees to occupy the Apartment at all times as a primary residence at least until the date Lessee sells Lessee's membership in the Corporation. Lessee may not lease, sublease or otherwise make available his Apartment for occupancy by Persons other than the Lessee's immediate family. Lessee must sign a certified statement that the Apartment will be used and occupied as his principal residence."

Paragraph 13 further provided that in the event of a default, the cooperative could terminate the agreement on ten days' notice, provided the lessee did not cure the default.

¶ 8    Accompanying the occupancy agreement was a copy of the cooperative's bylaws, section 2.1 of which stated: "[m]embership in the cooperative shall be restricted to natural persons

3

approved by the Board of Directors who have executed and are occupying Apartments in the Building in accordance with *** an Occupancy Agreement."

¶ 9　The cooperative also attached a copy of its Member Handbook, paragraph I.A. of which provided the following, under the heading "Occupancy and Usage":

"Dwelling units are to be used as private dwelling units only. Commercial use of the unit is not permitted. The apartment must be the primary residence for all persons listed with the Management Office. The persons listed on the HUD 50059 form, the Purchase Application, or the Household Composition form are the only persons authorized to occupy the unit. No additions to the household may be made without prior written authorization from Management. Changes to the household composition due to marriage or the natural birth or legal adoption of a child must be reported to Management immediately."

¶ 10　In support of its allegation that Ms. Ohiku failed to maintain her unit in the Waveland Avenue property as her primary residence, Lakeview East attached a September 5, 2017, report prepared by HUD OIG at the conclusion of an audit it conducted to determine if Lakeview East was operating the building in accordance with its land grant agreement (HUD OIG report). At the time of the audit and the report, Ms. Ohiku was the cooperative's board president. On page 8, under the heading "Other Requirements of the Program Were Not Followed," the report stated:

"[T]he president of the board said that two members, one of whom was on the Cooperative's board, associated with another unit did not always maintain the unit as their principal residence. One member moved out of the unit around 2002, and the board member did not always maintain the unit as their principal residence since they purchased a property in 2006 and was [*sic*] required to maintain the property as their principal residence for at least 1 year to satisfy an occupancy requirement of the mortgage. However,

as of March 2017, the board member considered the unit to be their principal residence."

¶ 11    Attached to the audit report was a list of "Auditee Comments" prepared by Lakeview East in response to the auditors' findings, which noted: "we disagree with the OIG's audit report that a member did not maintain their unit as their primary residence." Lakeview East said in those comments that the auditors had "incorrectly misinterpret[ed] a statement regarding the member's primary residence."

¶ 12    The OIG's responses to these comments, also appended to the report, included the following additional details regarding the purported exchange:

> "The president of the board stated that the Cooperative disagreed that a member associated with a unit did not maintain their unit at the project as their principal residence and stated that we misinterpreted a statement regarding the member's principal residence.
>
> On March 20, 2017, the president of the board said that she and her son did not always maintain their unit as their principal residence. The president also said that her son moved out of the unit around 2002, and she did not always maintain the unit as her principal residence since she purchased a property in 2006 and was required to maintain the property as her principal residence for at least 1 year to satisfy an occupancy requirement of the mortgage."

¶ 13    In further support of its allegation that Ms. Ohiku did not continuously use her unit in the Waveland Avenue property as her primary residence, Lakeview East attached to its complaint mortgage documents indicating that in May 2007, Ms. Ohiku signed as the borrower for the purchase of a condominium located at 7622 N. Greenview Avenue (Greenview Avenue property) and agreed that she would maintain that property as her principal residence within 60 days and would continuously occupy it for at least one year unless the lender agreed otherwise or there were

extenuating circumstances beyond her control.

¶ 14    The parties filed cross-motions for summary judgment. Ms. Ohiku submitted an affidavit attesting that she had resided exclusively at the Waveland Avenue property since 1977. She helped her son Odalo purchase the Greenview Avenue property, where he had lived with his wife and daughter since 2006, but she never lived there herself. Nor, Ms. Ohiku stated, had she ever paid the mortgage, taxes, insurance, assessments, or any other costs for the Greenview Avenue property. Odalo confirmed this in his own affidavit.

¶ 15    Ms. Ohiku attached to her affidavit what she averred to be true and correct copies of her W-2 forms from 1994 to 2019 listing the Waveland Avenue property as her residence and voter registration records listing it as her voting address since approximately 1988. Ms. Ohiku further averred that she was serving as board president during the 2017 HUD OIG audit and that "when Lakeview East received the first comments from the OIG about the audit, we all met together as a group to formulate an official response." Present at that meeting, according to Ms. Ohiku, were Lakeview East's attorney in this litigation, as well as the building's property manager. They agreed on the cooperative's official response and, as board president, Ms. Ohiku signed it. Ms. Ohiku maintained in her affidavit that she had "never spoken with HUD Regional Inspector General Kelly Anderson," who electronically signed the HUD OIG report, and had "never told HUD that [she] lived in the Greenview condominium."

¶ 16    Ms. Ohiku submitted five additional affidavits from long-time residents of the Waveland Avenue and Greenview Avenue properties. The circuit court aptly summarized those affidavits as follows:

> "1) the affidavit of Enrique Signoret, who purchased the first unit for sale at the Greenview property and has resided there continuously since 2006, attesting that Esther Ohiku has

never resided there; 2) the affidavit of Jeff Hendershott, a resident on Waveland since 1984, averring that he first met Esther in 1998 when he served on a building committee she chaired, that Esther has resided in the Waveland building continuously for as long as he has known her, and that he sees her pick up mail and take the elevator to her apartment; 3) the affidavit of Minda Bracey, who has resided at Lakeview since 1988, has known Esther for 30 years, and visits with her once a month (often at Esther's fully furnished apartment), attesting that she has never known Esther to live anywhere other than at the Waveland property; 4) the affidavit of Charles James Edmonds, who has lived next door to Esther since 1989 or 1990, averring that he has seen Esther at Lakeview nearly every day for over 30 years and that Odalo moved out years ago; and 5) the affidavit of Faye Overton, a Lakeview resident for 34 years, who attests that she has seen Esther in and around the building since she moved in and cannot recall a period of time when she has ever been absent."

¶ 17    In response to these submissions, and in support of its own motion, Lakeview East relied solely on the HUD OIG report and mortgage documents, described above, that it had attached to its complaint.

¶ 18    In response to Lakeview East's motion, Ms. Ohiku asked the circuit court to take judicial notice of publicly available information from the Cook County Assessor's and Cook County Treasurer's websites, as well as emails from the Cook County Assessor's office, which she argued confirmed that no homeowner's exemption had ever been taken for the Greenview Avenue property.

¶ 19    In a detailed written opinion, the court granted summary judgment in favor of Ms. Ohiku and against Lakeview East. It found that the issue of possession was moot as to Odalo, as it was

undisputed that he had vacated the premises years before the eviction suit was filed. The court then concluded that the motion papers, pleadings, and affidavits presented raised no genuine issue of material fact regarding Ms. Ohiku's continued use of her unit in the Waveland Avenue property as her primary residence. The court noted that Lakeview East had submitted no affidavit authenticating the HUD OIG report or the Greenview Avenue mortgage documents. Even if the documents could be authenticated, the court concluded, the audit report contained contradictory information. In addition to the statements that Lakeview East relied on, the report also contained responses from the cooperative itself denying the accuracy of those statements. And the mortgage documents only proved that Ms. Ohiku had promised to make the Greenview Avenue property her permanent residence, not that she had ever actually done so.

¶ 20    The court rejected Lakeview East's argument that simply by executing the mortgage documents for the Greenview Avenue property, Ms. Ohiku had held that property out as her legal primary residence and thus violated the Lakeview East residency agreement. It construed the occupancy agreement as requiring only physical occupancy and noted that it did "not speak to obtaining mortgages on other properties or noncompliance with other contracts."

¶ 21    Lakeview East moved for reconsideration, arguing that (1) the court had incorrectly implied that the cooperative changed its position on whether "use" of a unit as a primary residence meant something other than physical occupancy; (2) the HUD OIG report was self-authenticating under Illinois Rule of Evidence 902 (eff. Sept. 28, 2018); (3) the court could take judicial notice of the facts contained in the report; and (4) Lakeview East should be allowed to revive its dismissed claims for breach of duty and misappropriation.

¶ 22    Regarding the admissibility of the report, the cooperative attached a letter from April Knoch, legal counsel for HUD OIG, denying Lakeview East's request for an affidavit from Ms.

Anderson, the auditor who signed the report, authenticating it. That letter stated:

"In support of your request, you have asserted that Ms. Anderson's testimony is needed to authenticate the audit report in question and to verify the facts in the report, which will give the evidence in your summary judgment motion 'both the weight and the credibility needed.'

After careful review, I am denying your request for an affidavit from Ms. Anderson. We have determined that, since our auditors work in teams, the report was not based solely on Ms. Anderson's personal knowledge. We also believe that the report and the information contained within speaks for itself. Moreover, this matter is a third party dispute and, therefore, we decline any further involvement."

¶ 23    The court denied Lakeview East's motion to reconsider. It noted that while Ms. Ohiku had "submitted seven uncontroverted affidavits, as well as W-2 forms and voting records, evidencing that she ha[d] maintained the subject property as her principal/primary residence throughout her tenure there," "[n]o counteraffidavits were proffered by [Lakeview East]." The court further pointed out that "[a]t no point, either in its briefs or at oral argument," had Lakeview East ever argued that the court should take judicial notice of the HUD OIG report, and it could not raise that argument for the first time in a motion for reconsideration. In the court's view, HUD OIG's denial of Lakeview East's request for an affidavit "reflect[ed] [Lakeview East's] awareness of authentication issues with respect to the Report." Even if it was admissible, however, the court further concluded that the report did not effectively rebut Ms. Ohiku's affidavits.

¶ 24    Finally, the court rejected Lakeview East's attempts to revive its breach of duty and misappropriation claims, which had not been realleged or incorporated in its amended complaint.

¶ 25    Lakeview East now appeals.

¶ 26                                    II. JURISDICTION

¶ 27    The circuit court granted Ms. Ohiku's motion for summary judgment and denied Lakeview East's cross-motion for summary judgment on June 14, 2021. It denied Lakeview East's motion for reconsideration of those rulings on December 22, 2021. Lakeview East filed a timely notice of appeal from these orders on January 21, 2022, and we have jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments in civil cases.

¶ 28                                    III. ANALYSIS

¶ 29    On appeal, Lakeview East argues that in granting summary judgment to Ms. Ohiku, the circuit court both misconstrued the parties' occupancy agreement and failed to properly consider and weigh the evidence. In particular, Lakeview East argues the court was wrong to conclude that the HUD OIG report was inadmissible and insists that statements in the report prove that Ms. Ohiku did not always maintain her unit in the Waveland Avenue property as her primary residence.

¶ 30                               A. The Parties' Agreement

¶ 31    We begin by examining the language of the parties' agreement. When construing the words of a contract, our review is *de novo. Storino, Ramello and Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. Our principal objective is "to determine and give effect to the intention of the parties at the time they entered into the contract." *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 45. In doing so, we "look to the instrument itself, its purpose and the surrounding circumstances of its execution and performance." *Id.* Terms are given their ordinary and natural meaning, considered in the context of the document as a whole (*Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000)), and uncertainties that arise are generally "construed in the lessee's favor and against the lessor." *Clarendon America Insurance Co. v. Prime*

*Group Realty Services, Inc.*, 389 Ill. App. 3d 724, 729 (2009).

¶ 32    Lakeview East does not dispute that at all relevant times Ms. Ohiku physically occupied her unit at the Waveland Avenue property. Its position is that she violated paragraph 7 of the cooperative's occupancy agreement by promising in the mortgage documents for the Greenview Avenue property that she would make *that* property her primary residence for one year. Lakeview East argues that this promise alone violated the occupancy agreement—whether or not Ms. Ohiku ever physically occupied the Greenview Avenue property—because it meant that she did not continuously "use" or "maintain" her unit in the Waveland Avenue property as her primary residence. We agree with the circuit court, however, that the agreement requires only physical occupancy and does not address representations or promises residents may make to third parties.

¶ 33    Paragraph 7, which contains the heading "Occupancy Requirements/No Subletting" and the subheading "Occupancy," requires a member of the cooperative to "*occupy* the Apartment at all times as a primary residence." (Emphasis added.) Although the paragraph goes on to require that each member sign a certified statement that the unit will be "used and occupied" as that person's principal residence, Lakeview East has not argued that Ms. Ohiku violated any such certified statement.

¶ 34    Nor is support for Lakeview East's broad reading of the occupancy requirement found in the other documents Ms. Ohiku was bound by. The cooperative's bylaws state only that membership is restricted to persons who "have executed and are occupying" their units in accordance with the occupancy agreement. And, while the cooperative's handbook does speak of both "Occupancy and Usage," stating that "[d]welling units are to be *used* as private dwelling units only" (emphasis added), from the sentences that follow that requirement it is clear to us that *physical* occupancy and *physical* use are what they refer to. They require units to be used as private

11

dwellings and not for commercial purposes and are otherwise concerned with ensuring that the cooperative has accurate records of all individuals who will physically occupy the unit.

¶ 35    In sum, the circuit court construed the occupancy agreement as requiring Ms. Ohiku to physically occupy her unit, and we agree with that construction.

¶ 36    It should be noted that we do not doubt Lakeview East's assertion that there is a "real and actual basis" for it to require its members to consistently declare that their cooperative units are their primary residences, since tax credits decrease the overall tax burden on a multi-unit property. The occupancy agreement itself, however, does not speak of declarations, tax credits, or exemptions. And even if it did, we agree with Ms. Ohiku that Lakeview East presented no evidence suggesting that she ever claimed a property tax exemption on another property or that the cooperative's tax exemptions were affected in any way by her conduct.

¶ 37                                   B. Summary Judgment

¶ 38    We next consider whether, on the question of Ms. Ohiku's physical occupancy, there was a genuine issue of material fact precluding summary judgment in her favor. Summary judgment is appropriate where, construed liberally and in favor of the party opposing judgment, "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2020). A defendant moving for summary judgment has the initial burden of production, which can be met by either (1) introducing evidence that, if uncontroverted, would disprove the plaintiff's case (see *Purtill v. Hess*, 111 Ill. 2d 229, 240–41 (1986)), or (2) establishing that a lack of evidence will prevent the plaintiff from proving an essential element of the cause of action (see *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805 (1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), overruled on other grounds by

*Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303 (2006)). The burden then shifts to the plaintiff to show a factual basis to support the elements of his claim. *Rice*, 294 Ill. App. 3d at 805. We review a circuit court's grant of summary judgment *de novo* (*Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009)) and may affirm "on any basis appearing in the record" (*Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 21).

¶ 39 If the party moving for summary judgment supplies facts which, if not contradicted, would entitle it to a judgment as a matter of law, the opposing party must meet that evidence with evidence of its own. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974). Here, Ms. Ohiku's unrebutted affidavits (from herself, her son, and other residents of both the Waveland Avenue and Greenview Avenue properties), as well as the voting and tax records she submitted in support of her motion, all establish that she has continuously lived in her unit at the Waveland Avenue property and has never lived at the Greenview Avenue property or anywhere else during the relevant period. Lakeview East presented no new evidence to counter these submissions but relied solely on the same two exhibits it had attached to its complaint—the Greenview Avenue mortgage documents and the HUD OIG report.

¶ 40 The circuit court correctly concluded that the mortgage documents revealed nothing about Ms. Ohiku's compliance with Lakeview East's occupancy agreement. At best, those documents indicate that she made a promise to a third party that conflicted with the promise she made to Lakeview East. Given the limited evidentiary value of those documents, Lakeview East has doubled down on its argument that the statements contained in the HUD OIG report constitute an admission by Ms. Ohiku and are thus all the evidence the cooperative needs to prove its case. We simply cannot agree.

¶ 41 As an initial matter, we agree with the circuit court that a proper foundation was not laid

for the report. The proponent of documentary evidence must generally lay a foundation for its introduction into evidence by identifying and authenticating the document. *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). "Most often, this is accomplished through the testimony of a witness who has sufficient personal knowledge to satisfy the trial court that a particular item is, in fact, what its proponent claims it to be." *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 415 (2005). Here, Lakeview East tried and failed to obtain an affidavit from the individual who signed the HUD OIG report only after the court ruled in Ms. Ohiku's favor. It then belatedly argued in its motion for reconsideration that the court could simply take judicial notice of the report. Even if this argument were not forfeited (see *Triumph Community Bank v. IRED Elmhurst*, LLC, 2021 IL App (2d) 200108, ¶ 48 ("[a] party may not raise a new legal theory for the first time in a motion to reconsider")), we agree with Ms. Ohiku that the disputed out-of-court statement that Lakeview East seeks to rely on is in no way a proper subject for judicial notice. See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) (providing that a judicially noticed fact is one not subject to reasonable dispute, either because it is "generally known within the territorial jurisdiction of the trial court" or because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

¶ 42    Equally unpersuasive is Lakeview East's argument that the HUD OIG report is self-authenticating. Citing *Pan American Bank v. Martino*, 2018 IL App (1st) 172199-U, ¶ 23, the cooperative maintains that the report qualifies as a domestic public document bearing an official seal under Rule 902(1) (eff. Jan. 1, 2011) and thus requires no affidavit authenticating it. *Pan American* is an unpublished order of this court issued before the effective date of an amendment to Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021) permitting the citation of such orders as persuasive authority. Even if it was proper for us to consider, the documents referenced in *Pan*

*American* were created by the Cook County Clerk's office, bore the seal of Cook County, and were "stamped, dated, and 'approved' " by the Cook County Clerk. *Id.* ¶ 24. Here, while the copy of the HUD OIG report included in the record on appeal contains that agency's *logo* on its cover and introductory pages, it is electronically signed by a regional auditor and does not appear to bear any official stamped seal of office. See Black's Law Dictionary (11th ed. 2019) (defining a "seal" as "[a] design embossed or stamped on paper to authenticate, confirm, or attest; an impression or sign that has legal consequence when applied to an instrument").

¶ 43 We furthermore agree with Ms. Ohiku that, even if the report were self-authenticating, Lakeview East still could not rely on statements contained in it for the truth of the matter asserted without demonstrating that a specific hearsay exception applies. See *People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245, ¶ 51 (noting that "certified copies of documents *** are self-authenticating" but explaining that where such a document "is introduced to prove what it asserts, *** no combination of signature, certificate, or seal can make it admissible if it does not satisfy the requirements of the hearsay exceptions" (internal quotation marks omitted)). There are at least two out-of-court declarants, here, possibly three: Ms. Ohiku, the unidentified member of the audit team she purportedly spoke to, and perhaps a different member of the team who authored the portions of the report at issue.

¶ 44 Lakeview East's insistence that it did not seek to admit the statements in the HUD OIG report for the truth of the matter asserted, but only "to show that it was impossible for Ohiku to have 2 primary residences" is simply double-talk. The statements were plainly offered for the truth of what they asserted—that Ms. Ohiku failed to continuously maintain her unit in the Waveland Avenue property as her primary residence. Assuming, as Lakeview East insinuates in its reply, that Ms. Ohiku's purported statement to a member of the audit team would qualify as an admission

by a party opponent (see *County of St. Clair v. Wilson*, 284 Ill. App. 3d 79, 88 (1996) (noting that "[a]s a general rule any statement, written or not, made by a party or in his behalf which was inconsistent with his present position may be introduced into evidence against him")), the recounting of that conversation in the report itself represents an additional layer of hearsay that must be overcome.

¶ 45    Lakeview East's attempt to invoke the public records exception to the rule against hearsay found in Illinois Rule of Evidence 803(8) (eff. Sept. 28, 2018) is also unsuccessful. The cooperative cites *Kole*, 2012 IL App (2d) 110245, for the proposition that "the burden is on an objecting party to show that a public record is untrustworthy." But the *Kole* court had already concluded that the IRS report and waiver form at issue in that case were public records within the meaning of the rule, based largely on the fact that federal courts had found such documents admissible under an analogous federal rule of evidence. *Kole*, 2012 IL App (2d) 110245, ¶¶ 55-56. Here, Lakeview East has failed to similarly establish that the statements it seeks to rely on in the HUD OIG report fall within any of the three types of public records described in the rule. The statements do not describe the activities of HUD OIG or its audit team, Lakeview East has made no argument at all that the statements detail matters observed pursuant to a duty imposed by law, and we agree with Ms. Ohiku that the statements do not constitute factual findings of the agency.

¶ 46    We address all of these questions regarding the HUD OIG report's admissibility because this is where Lakeview East has chosen to focus its arguments on appeal. The broader problem with the report that the cooperative ignores, however, is precisely what the circuit court identified in its order. Even if the statement attributed to Ms. Ohiku could be considered, the report also contains a clear refutation of that statement's accuracy *by Lakeview East*. We agree with the circuit court that, questions of admissibility aside, Lakeview East's evidence was insufficient to raise a

genuine issue of material fact regarding Ms. Ohiku's compliance with the occupancy agreement.

¶ 47                                            IV. CONCLUSION

¶ 48     For all of the above reasons, we affirm the circuit court's grant of summary judgment in favor of Ms. Ohiku and against Lakeview East.

¶ 49     Affirmed.